[PHILADELPHIA, MAY 1ST, 1841.]

/ MARSEILLES and Another *against* KERR.

IN ERROR.

Where the defendant, a tenant for years, left the premises in the middle of the year, and sent the key to the landlord, who gave notice to the tenant that he should continue to hold him liable for the rent, and then the landlord took possession and offered the house to let; it was held that he might recover from the defendant in an action for use and occupation, the amount of rent that accrued between the time of his leaving the house and the time that it was again rented.

ERROR to the District Court for the City and County of Philadelphia.

(Marseilles v. Kerr.)

James Kerr brought an action on the case against Peter Marseilles and James S. Martin, partners under the firm of Marseilles & Martin, and declared in assumpsit for the use and occupation of a certain warehouse in the city of Philadelphia.

At the trial before STROUD, J., on the first of May, 1840, the plaintiff claimed for one quarter and seven days rent, at the rate of $600 a quarter; and proved by the admission of the defendants that they had taken the store from him for one year, from the 22d of April, 1837, at the rent of $2400 per annum, payable quarterly.

The defendants produced as a witness one William Burton, who testified as follows:

"I was book-keeper and clerk of Marseilles & Martin, in 1836 and also in 1837. We finally got out of Mr. Kerr's store in Market street, on Saturday, October 21st, 1837; there were none of our goods in that store after that time. I went on the morning of that day, (Saturday,) with the receipt book and money to pay him the rent, taking the key with me; I did not find him at home, until near ten o'clock; I then met him in the street, at his door; I told him that I called to pay him the rent, give him the key, and get the receipt for it. Mr. Kerr said that he would not attend to it that night, and would not receive the rent until it was due, and went in and shut the door. On Monday morning, I called again; I paid him the money, and he wrote the receipt; I laid the key down on the table; he took the key and forced it into my breast; I opened my coat and the key fell on the floor; he altered the receipt as it appears in the book, from the 22d to the 23d. This was at 8 o'clock, A. M.; I said to him, I suppose if I had called yesterday, being Sunday, you would not have received the rent; Mr. Kerr had said that it was due on the 22d; he said no, he would not have received it on Sunday; I left the key lying on the floor, and came away. Mr. Kerr said he would not receive the key. In the course of a few days I saw a bill on the store; it was to let; Marseilles & Martin had nothing to do with that store from the Saturday when they moved, and when I paid the rent on Monday and left the key with Mr. Kerr; they never occupied it from Saturday, October 21st, 1837." Cross-examined.—"I called with the rent and key on Saturday, on Mr. Kerr; I did not offer the key until I had paid the rent, and got the receipt."

The following letters from the plaintiff to the defendants were put in:

"Philadelphia, 23d October, 1837.

Gentlemen—Your agent this morning, contrary to my directions and against my consent, left in my entry the key of the house and store No. 122 Market street, leased by me to you for one year, at the rate of $2400 per annum, payable quarterly.

(Marseilles *v.* Kerr.)

The key will be tendered to you by the bearer, and if you refuse to receive it, it will be at your own risk and costs.".

"Philadelphia, 24th October, 1837.

Gentlemen—I yesterday tendered you the key of the store and house No. 122 Market street, and you refused to receive it. I might now leave the premises unoccupied, and hold you liable for the whole loss; but I am unwilling to expose you to any injury that may be avoided.

I shall therefore, on your account and at your risk, make every endeavour to lease the premises on the best terms that can be obtained, and hold you liable for any deficiency that may arise."

The evidence being closed, the defendants' counsel requested the court to charge the jury.

"That the plaintiff having declared for use and occupation, and and the proof being that they did not use and occupy it; that if the plaintiff could recover at all, he could not recover in this form of action, but must recover for a breach of contract."

Whereupon, the learned judge charged the jury as follows:

"The plaintiff alleges that on the 22d of April, 1837, he let the store to the defendants for a year; and it is admitted by the defendants that they occupied it for two quarters. The plaintiff's receipts for these two quarters,—$600 for each—have been read in evidence. Mr. Woodward says, Mr. Marseilles, one of the defendants, told him at the store which he was then occupying, that they had rented it of Mr. Kerr for one year, at all risks; that they had a right to keep it for one year. On the 21st of October, (being Saturday,) Mr. Burton, the defendants' clerk, called with the key to pay the second quarter's rent. Not finding the plaintiff at his first call, he went a second time in the evening, and waited till about ten o'clock, when he met the plaintiff near his door, and told him he had come to pay the rent and give up the key. The plaintiff declined receiving the rent then, saying it was not due. The witness called a third time, (which was on Monday morning, the 23d of October,) when the rent was paid and a receipt given, which is in evidence. The witness says he then laid the key on the table, that Mr. Kerr took it and forced it into his breast, and that he, the witness, opened his coat and the key fell on the floor. The key was then left on the floor, Mr. Kerr saying he would not receive it. This witness also says, that the defendants moved out of the store on the 21st of October, 1837, and never occupied it afterwards. None of their goods, however, he says were there afterwards. The defendants, in reference to this part of the testimony, contend, that if they are liable at all to the plaintiff for any thing beyond what they have paid, they

are not liable in this form of action, which is for use and occupation. In regard to this point, I say to you, that if you find the store was taken for a year, payable quarterly, and that the plaintiff did not accept the key when offered by the defendants' witness, but on the contrary, refused to receive it, and did occupy the store during the third quarter, the plaintiff may recover for the third quarter, with interest from the time when it was payable.

The following errors were assigned:

" 1. That the judge erred in charging that the plaintiff could recover in this form of action.

2. That the judge erred in charging the jury that the plaintiff could recover, although the defendant did not occupy the store in the third quarter."

Mr. *Jack*, for the plaintiff in error.

There is but a single point in this case: can the defendant in error recover in this form of action for use and occupation, where he accepts the key, takes possession, puts a bill on the store for rent— under his notice to plaintiffs that he would hold them liable for the rent that might be lost by their non-occupancy, and where it clearly appears that the plaintiffs did not occupy the premises, directly nor indirectly, nor consent to be liable for any such loss? The plaintiffs contend, that it is a settled point that where the landlord does such acts as these, he cannot recover. In 2 *Coventry & Hughes's Digest*, p. 1454, it is said, " No action is maintainable for use and occupation on account of rent due, after acceptance of possession by the landlord, where there has been no actual possession or occupation." 1 *Saund. Rep.* 176, c, note *m. Whitehead* v. *Clifford*, (5 *Taunt.* 518; 1 *E. C. L. R.* 173.)

Mr. *Randall*, contra.

In this case, the defendants below took the premises from the plaintiff, for one year, from the 22d of April, 1837, at the rent of $2400 per annum, payable quarterly. They occupied the premises six months, paid the rent, and attempted to force the key upon the plaintiff, which he refused. It appeared by the deposition of George Mulford, that the plaintiff notified the defendants that he would put a bill up on their acccount, and at their risk. The premises remained unoccupied during the whole of the third, and part of the fourth quarter. At the suggestion of the judge, the plaintiff restricted his claim to one quarter, ending in January, 1838. The ground of defence on the evidence was, that the action for use and occupation could not be maintained, as the defendants did not actually occupy the premises. On this point, the authorities are clear. In *Redpath* v. *Roberts*, (3 *Epinasse N. P. Cases*, p. 225,) Lord Kenyon ruled, that this action for use and occupation will lie, though the defendant

was not in possession, and the plaintiff had put up a bill on the house to rent. In *Matthews* v. *Sawell*, (8 *Taunt.* 276 ; 4 *Eng. Com. Law Rep.* 101,) the court lay down the same rule. In 2*d Wharton's Selwyn's Nisi Prius*, 550, the case of *Miles* v. *Bottomly* is cited, where this doctrine was ruled by Lord ELLENBOROUGH at Nisi Prius; the whole authorities are reviewed, and the law summed up in favour of the action. In *Harland* v. *Bromley*, (1 *Starkie*, 455 ; 2 *Eng. Com. Law Rep.* 467,) the same doctrine is recognised. In *Pinero* v. *Judson*, (6 *Bingham*, 206 ; 19 *Eng. Com. Law Rep.* 56,) the case cited by Judge STROUD on the trial, the court adopt the same rule. In Pennsylvania, the authorities are equally clear. In *Henwood* v. *Cheeseman*, (3 *Serg. & Rawle*, 502,) the court say, " This action is founded on privity of *contract*, not privity of *estate*." In *M'Gunnagle* v. *Thornton*, (10 *Serg. & Rawle*, 251-3,) the court fully recognise, on the ground of principle and precedent, the doctrine that actual possession is not necessary to sustain assumpsit.for use and occupation.

ROGERS, J., delivered the opinion of the court.

That the actual occupation of the premises leased, is not necessary to support an action of assumpsit for use and occupation, is ruled in *M'Gunnagle* v. *Thornton*, (10 *S. & R.* 251,) and in the other cases cited at the bar. This action depends either upon actual occupation, or upon an occupation which the defendant might have had if he had not voluntarily abstained from it. *Whitehead* v. *Clifford*, (5 *Taunt.* 518.) But it is said no action is maintainable for use and occupation, on account of rent due, after acceptance of possession by the landlord, where there has been no actual possession or occupation. *Coventry & Hughes, Dig.* 1454 ; 5 *Taunt.* 518. And this is true, because from the time of unqualified acceptance of the possession, the contract is at an end. But is that the case here ? The landlord accepts the key, takes possession, puts a bill on the house for rent, but at the same time.apprises his tenant that he still holds him liable for the rent. This was for the benefit of the tenant; and was not intended, nor can it have that effect, to put an end to the contract and discharge him from rent. Although the tenant did not actually occupy the premises, he was at liberty to do so ; and is therefore liable for the action.

Judgment affirmed.