75  344
150  358
75     344
27 SC  265

## Pleasonton & Biddle's Appeal.   De Silver's Estate.

1. A lease was for a year, either party might determine the lease at the end of the term by giving a month's previous notice to the other. A surety for the lessee gave due notice to the lessor to collect the rent from the lessee and that he would not be bound beyond the end of the current year, the lessee held over, the surety died before the end of the succeeding year. *Held*, that his estate was not liable for rent during that year.

2. It was inequitable to the surety to continue the tenant for another year after the notice.

3. Equity often relieves a surety when the principal would not be relieved.

4. A surety cannot at will discharge himself from his contract.

5. Coe *v.* Vogdes, 21 P. F. Smith 383, distinguished.

February 24th 1874.   Before AGNEW, C. J., WILLIAMS, MERCUR and GORDON, JJ.   SHARSWOOD, J., at Nisi Prius.

Appeal from the Orphans' Court of *Philadelphia*: No. 119, to July Term 1872. In the estate of Harrison T. De Silver, deceased.

In the distribution in the Orphans' Court of the estate of the decedent, Augustus J. Pleasanton and Chapman Biddle, trustees, &c., of Joseph Dugan, deceased, claimed from the estate of the decedent, who had been surety for Emma Anderson as lessee of the claimants, arrears of rent due from Mrs. Anderson.

On the 28th of December 1866, Mrs. Anderson entered into a lease with the trustees for the rent of a house in Philadelphia for twelve months from January 1st 1867, at the rent of $133.34 per month, payable at the end of each month. Besides other stipulations in the lease, were the following :—

* * * "Either party may determine this lease at the end of such term, provided such party shall have given the other one month's previous notice of the intention so to do. * * * All rights and liabilities herein given to, or imposed upon either of the parties hereto, shall extend to the heirs, executors, administrators, successors and assigns of such party. It is further agreed, that in case the said lessee shall hold over and remain in possession of said premises after the expiration of said term, then said lessee shall be considered as tenant for another year, upon the same terms and conditions as are above specified, unless the lessors shall have given one month's previous notice of their intention to change said terms and conditions, and the lessee holding over after such notice shall be considered as lessee under the terms mentioned in said notice, for so long a time as she may remain in possession of said premises without further notice."

The decedent became surety for Mrs. Anderson by the following agreement :—

"For value received, I do hereby agree to be responsible to the above-named lessors, their successors or assigns, for the true and

[Pleasanton's Appeal.]

faithful performance of the above-named contract on the part of Mrs. Emma Anderson.

" In witness whereof, I have hereunto set my hand and seal, the twenty-eighth day of December 1866.

H. T. DE SILVER.   [L. S.]"

On the 4th of June 1869, the decedent by writing notified the trustees to collect all rent that might accrue thereafter from Mrs. Anderson, and that he would not be surety after the then current year; that term expired December 31st 1869. The decedent died September 10th 1870. Mrs. Anderson continued to occupy the premises during the year 1870 and for the month of January 1871. At the end of August 1870 she was in arrears for rent to the amount of $128.50, and she paid none for the remainder of the time during which she occupied the premises.

The auditor, William D. Baker, Esq., to whom it was referred to make distribution, rejected the claim.

The trustees excepted to the report. The exception was overruled and the report confirmed by the Orphans' Court, Ludlow, J.

The trustees appealed to the Supreme Court and assigned the confirmation of the report for error.

*Chapman Biddle*, for appellants.—De Silver's engagement was suretyship: Allen v. Hubert, 13 Wright 261 ; therefore there was a direct liability on his part: Reigart v. White, 2 P. F. Smith 440 ; Coe v. Vogdes, 21 Id. 383. The liability continued, the lessee not having determined the lease by notice: Laguerenne v. Dougherty, 11 Casey 47.

*D. Webster*, for appellee.—The surety was entitled to benefit of the covenants of the lease: Arlington v. Merricke, 2 Saund. 411 ; Liverpool Water Works v. Atkinson, 6 East 507 ; Hassell v. Long, 2 Maule & Sel. 363 ; Wardens of St. Saviour v. Bostick, 2 N. R. 173; Leadley v. Evans, 2 Bing. 32; Pitman on Prin. and Surety 125, 167 *et seq.*

The opinion of the court was delivered, March 9th 1874, by

AGNEW, C. J.—This was a lease for one year, renewable from year to year, if the tenant held over and the landlord gave no notice to quit ; either party having power to determine it by one month's notice previous to the end of the year. The rent was payable monthly. In June 1869, the trustees (as landlords) having written to De Silver, the surety for the tenant, about the rent, the latter replied, giving notice to collect the rent from the tenant, and also that he would not continue surety after the end of the current year. Mrs. Anderson, the tenant, remained in possession and failed to pay the rent due on and after the 1st of August 1870, and it is for this

unpaid rent the trustees claim payment out of the estate of De Silver, the surety, who died September 10th 1869.

Suretyship is a purely voluntary and gratuitous relation. In strict law the surety is bound equally with the principal, but the nature of his relation often brings equity to his relief when the principal cannot receive it. But a surety cannot discharge himself from his contract at will. This was decided in Coe *v.* Vogdes, 21 P. F. Smith 383. His suretyship being a continuing contract, so long as his relation remains his contract continues. In that case no step was taken to prevent a renewal of the lease, and it was said, whatever might be the power of the sureties, as contended, to limit their future liability by notice against the renewal of the lease, the affidavit of defence sets forth no such notice, and no termination of the lease in fact. A mere notice that the sureties would not be liable is no defence to their covenant, for they could not dissolve the contract at pleasure.

In the present case if the surety had done nothing to prevent a renewal he could not escape his liability. But De Silver gave more than half a year's notice not to renew the lease after the expiration of the current year. Before the end of the year, and while it was still in the power of the trustees to demand other sureties from the tenant, or to give notice to her to quit, De Silver died, and his estate necessarily went into administration. Clearly after this explicit notice to collect the rent from the tenant, and not to renew the lease, and after the change in circumstances produced by the death of De Silver, it was inequitable in the trustees to continue the tenant for another year on the credit of the surety. Just the event happened which De Silver evidently had feared. Mrs. Anderson, the tenant, became unable to pay the rent. The trustees, as landlords, had no right in good conscience to continue the liability of the surety after his death, and when the law had taken charge of his estate for distribution among his own creditors and legal representatives. If they could do it for one year they could do it so long as the tenant, though insolvent, might choose to remain, making the rent a charge on the estate of De Silver indefinitely, to the prejudice of creditors and others. The lien of the debt even upon the real estate might be perpetuated indefinitely by filing a copy of the lease and the covenant of De Silver in the prothonotary's office under the 24th section of the Act of 24th February 1834. Had the contract of lease been entire for a single term, including the year 1870, the surety would be released. But the contract was severable at the will of either party, and the united wills of both were necessary to concur in its continuance.

It is this feature which enables equity to take hold of it, and prevent a renewal to the prejudice of the surety's estate, on the ground that the change in the circumstances of the parties demanded a termination of the relation of the surety, in justice and

good conscience. Had De Silver suffered the lease to begin again for 1870, his estate would have been liable. But his notice and death were facts probing the conscience of the landlords, who could not in equity permit a renewal of the lease on the credit of the surety, when they had it in their power to compel the tenant to give a new surety or terminate the lease.

The decree of the Orphans' Court is affirmed with costs and appeal dismissed.