## Auer *versus* Penn.

1. A surrender of demised premises by the tenant during a term, in order to be effectual so as to release the lessee from liability to pay rent, must be accepted by the lessor, and the burden of proof is upon the lessee to prove such acceptance.

2. Where a lessee vacates premises during his term, delivering the keys to the lessor, who retains them, but notifies the lessee that he will hold him for the rent, there is no room for the presumption of such a surrender as will relieve the lessee from liability on his covenant to pay rent.

3. Where, in such case, the landlord puts a bill upon the vacated premises and rents the same to another tenant, having first notified the lessee of his intention so to do, said lessee is not relieved from liability except for the amount of rent received by the landlord from the new tenant during the lessee's unexpired term.

January 17th 1882. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ. GREEN, J. absent.

ERROR to the Court of Common Pleas No. 1, of *Philadelphia county :* Of July Term 1881, No. 18.

Covenant, by Joseph Penn against John Auer, upon a contract of suretyship annexed to a lease. Upon a former writ of error, a judgment entered for plaintiff for want of a sufficient affidavit of defence was reversed, and a procedendo awarded : See 11 Norris 444.

On the trial, before BIDDLE, J., the following facts appeared : On October 15th 1875, the plaintiff leased a certain house to one Jacob Brown, for the term of five years, at the yearly rent of $360, payable in equal monthly payments of $30 each. The lease contained the usual covenants on the part of the lessee to pay the rent as due, &c. At the foot of the lease was the agreement of suretyship, signed and sealed by the defendant, John Auer, whereby he covenanted that the lessee should faithfully perform all the covenants in the lease on his part to be performed, otherwise immediate recourse may

[Auer *v.* Penn.]

be had against the surety without any prior proceedings against the lessee.

The lessee entered, paid his rent regularly to January 1877, and moved out, without notice to his landlord, on February 13th 1877, because, as he alleged, of defective drainage; after removal he took the keys to the landlord's agent, J. McGeogh. McGeogh testified that he declined to receive them, and stated that he would hold his surety for the rent, whereupon Brown threw them on the floor and went out. Brown testified that McGeogh took the keys, saying it was all right, but he admitted that McGeogh said he would hold John Auer, the surety, for the rent.

McGeogh sent to Auer the following letters on the days of their date.

"PHILADELPHIA, February 17th 1877.
"Office 2228 North Fifth street.

"JOHN AUER, Esq. Dear Sir:—The rent of No. 1836 Germantown avenue was due on the 15th instant, and I would like you would call up and pay it. Brown, the tenant for whom you are security, having removed, of course we will have to hold you for the rent.      Yours, respectfully,
"J. McGEOGH."

"February 21st 1877.

"JOHN AUER, Esq. Dear Sir:—The tenant of 1836 Germantown avenue having removed, and as under the lease you are security, I shall look to you for the payment of the rent. If you desire it, I shall place a bill on the house and rent it for you; but in no case will we release you until the expiration of the lease. You will take notice that unless I hear from you in this matter within a few days, I shall proceed to rent the house at your risk, holding you, of course, for the rent until the expiration of the lease.      Yours, respectfully,
"JAMES McGEOGH,
"Agent for Jos. Penn, 2228 North Fifth street."

"February 23d 1877.

"JOHN AUER, Esq. Dear Sir:—If I do not hear from you to-day, I shall put a bill on the property 1836 Germantown avenue to-morrow, still holding you, as before stated, for rent until the expiration of the lease. Yours, respectfully,
"J. McGEOGH, Agent for Joseph Penn."

"PHILADELPHIA, March 1st 1877.

"JOHN AUER, Esq. Dear Sir:—A party named Frederick Metzger is desirous of renting 1836 Germantown avenue; he is willing to pay thirty dollars per month. If you have any ob-

[Auer *v.* Penn.]

jection please let me know. If I do not hear from you by to-morrow morning, I will rent it to him, and still hold you as security.             Yours, respectfully,
"JAS. McGEOGH, Agent for Joseph Penn."

"PHILADELPHIA, September 15th 1877.
"JOHN AUER, Esq. Dear Sir:—Frederick Metzger, present occupant of 1836 Germantown avenue, is removing. John Riehl, a former occupant of the place, desires to rent it. Unless I hear from you to the contrary, I shall rent it to him, still holding you, of course, for the rent as security on the lease.
"Yours, respectfully,       JAMES McGEOGH,
"Agent for Joseph Penn, 2228 North Fifth street."

"January 2nd 1878.
"JOHN AUER, Esq. Dear Sir:—Store 1836 Germantown avenue is again vacant; there is a party named Sylvester Kreider who wishes to rent it as a barber shop. If you have no objections I will rent it to him, still holding you, of course, as security under the lease. Yours, respectfully,
"J. McGEOGH,
"Agent for Joseph Penn, No. 2228 North Fifth street."

"January 21st 1878.
"JOHN AUER, Esq. Dear Sir:—Premises 1836 Germantown avenue being idle, I shall put a bill on the same, to rent, unless I hear from you to the contrary, holding you, of course, as security under the lease. Yours, respectfully,
"J. McGEOGH, 2228 North Fifth street."

"May 13th 1878.
"JOHN AUER, Esq. Dear Sir:—There is a party named William Piersons, who desires to rent the house 1836 Germantown avenue, for a saloon. I can not get any more than $25. If I do not hear from you by to-morrow morning I shall rent it, holding you of course under the lease as security.
"Yours, respectfully,
"J. McGEOGH, 2228 North Fifth street."

No answers were received to these communications. McGeogh rented the premises to various tenants from time to time, credited the lessee with the rents received from them, leaving a balance due, at the expiration of the term, of $355, for which this suit was brought.

The defendant presented the following points:—

1. "That if the jury find that the premises leased were unhealthy and untenantable by reason of impure air, arising from

defective drainage, which existed when the lease was made; that this fact was known to the plaintiff, and he refused to remedy the defect, and that the tenant removed in consequence thereof, the plaintiff cannot recover in this suit. The tenant is not bound to repair defects existing when he leases the premises."

*Answer.* "I was going to say that that is a proposition of law, which it does not seem to me necessary to answer, in one way or another, here, because there is no testimony to that effect; on the contrary, the testimony on both sides has been that the house was perfectly satisfactory at the time it was leased, that Mr. Brown lived in it about a year afterwards. I do not think the state of facts arises here which makes it necessary for me to answer the point."

2. "If the landlord took possession of the premises, and used or occupied the same, either personally or by a second tenant, he will be estopped from collecting the rent for the same period of the former tenant, unless otherwise agreed between them."

*Answer.* "The phraseology there is a little ambiguous. 'If the landlord took possession of the premises.' If that means that if the landlord accepted the surrender of the premises and agreed to release the tenant, the proposition is true; but the mere fact, as I have said to you, of the landlord's taking possession of the premises and renting them, after the other party had refused to remain upon them, does not produce the effect that is here asked for. If that is the meaning of the point, I refuse to affirm it."

The learned judge charged the jury, inter alia, as follows: —"The rule of law is perfectly well settled in this state, that a landlord is not liable for repairs unless there is a special stipulation to that effect in the lease. Any man has a right to take the premises of any other man if he pleases, making any covenant or agreement with the landlord that he pleases, but it is settled that he cannot withhold the payment of the rent on account of the bad condition of the premises.

"The second point that he makes is, that he surrendered possession of these premises. A contract to lease a house, or a contract to take a house, is like any other agreement. After you have made it, one party has no right to put an end to it. No man, after you have made an agreement or contract with him, can come to you and say, 'I will give up this contract.' Unless both parties assent to the giving up of the contract, the contract cannot be broken in that way. Undoubtedly, if the landlord and tenant come together, and a landlord agrees to accept a surrender of the premises, that would end the lease and responsibility of the tenant; but a tenant has no right to go into

[Auer *v.* Penn.]

a landlord's office and say, 'I have done with the house,' and throw the key on the floor of the landlord's office. The landlord is not bound to let the key remain on the floor; he has a perfect right to hang it upon a nail without it being evidence that he accepts the surrender. . . . On the contrary, he says, 'I will hold your surety responsible.' It does not constitute a surrender or an acceptance by the landlord that he takes possession of the property and looks after it, and rents it, because that is for the benefit of both parties.

" [If a man refuse to continue your tenant, gives up the house into your hands, why then you have a right to put a bill upon the house, and try to rent it, because if you rent it, it is so much saved to Mr. Auer, so much saved to the surety, or the tenant, because you have to give an account of every cent you make out of the house, and certainly it is much better for the tenant that the landlord should rent the house and get something for it than to simply lock the door, and lay by and sue the tenant or the surety for the whole amount of the rent for the whole term for which he has taken it, so that, being for the benefit of both parties, it is no presumption that the landlord has accepted a surrender that he has taken and leased the house.]

" [In regard to the leasing in the name of Mr. Penn, I see no pertinence in that, one way or the other. I do not see what right he would have to use Mr. Auer's name as landlord any more than he had to use the name of any one of us, and rent any property for us. He did the best—he was bound to do the best he could for the property—it was quite immaterial under whose name he rented it.] "

Verdict and judgment for the plaintiff, for the amount claimed. The defendant took this writ of error, assigning for error the answers of the court to his points, and the portion of the charge above quoted in brackets.

*M. Arnold* (*Wm. W. Ker* with him), for the plaintiff in error.—While a landlord may take possession of premises surrendered or abandoned by his tenant, without discharging the tenant from his liability to pay rent, yet if he goes farther and leases to a new tenant he thereby necessarily accepts the surrender of the former tenant. He cannot have two tenants at the same time, holding under independent leases: *Pratt v. Jewelry Co.*, 19 P. F. Smith 53; *Auer v. Penn*, 11 Norris 444; *Smith v. Niver*, 2 Barb. 182; *Murray v. Shave*, 2 Duer 183; *Stobie v. Dills*, 62 Ill. 432; 2 Starkie on Ev. 342; *Schieffelin v. Carpenter*, 15 Wend. 407. So, if a landlord takes possession of the ruins of a burned building for the purpose of rebuilding, without the tenant's consent, it is an eviction: if with the ten-

[Auer v. Penn.]

ant's consent, it is a rescission of the lease, and in either case rent is suspended : Magaw v. Lambert, 3 Barr 444.

*Wm. Gorman*, for the defendant in error, cited Marseilles v. Kerr, 6 Whar. 500 ; Breuckmann v. Twibill, 8 Nor. 58.

Mr. Justice Paxson delivered the opinion of the Court, February 13th 1882.

Nothing is better settled in Pennsylvania than that a tenant for years cannot relieve himself from his liability under his covenant to pay rent by vacating the demised premises during the term, and sending the key to his landlord. The reason for it is that in the absence of fraud, one party to a contract cannot rescind it at pleasure. And the landlord may accept the keys, take possession, put a bill on the house for rent, and at the same time apprise his tenant that he still holds him liable for the rent. All this, as was said by Mr. Justice Rogers in Marseilles v. Kerr, 6 Wharton 500, is for the benefit of the tenant, and is not intended, nor can it have the effect, to put an end to the contract and discharge him from rent. A surrender, a release, or an eviction will undoubtedly relieve a tenant, and it was said by Chief Justice Gibson, in Fisher v. Milliken, 8 Barr 111, that nothing less would do so. This remark, however, was without the authority of the court, and must be regarded as dictum. The case in hand does not require us to assert so broad a proposition. There was neither a release nor an eviction here, but the surety claimed to be discharged because after the tenant, who was his principal, sent the keys to the landlord, the latter leased the property to another tenant. Yet there is no pretence that the landlord accepted a surrender ; on the contrary the proof is clear that he declined to do so, and notified the defendant below that he would hold him for the rent. This notice was repeated on more than one occasion when he was about to lease the property to another tenant. Yet it was urged by the defendant below that such subsequent leasing by the landlord, and the acceptance of rent from the tenant, raised a presumption of a surrender. A surrender of demised premises by the tenant during the term, to be effectual, must be accepted by the lessor. The burden of proof is upon the tenant to show such acceptance. He sets it up to relieve himself from his covenant, and must prove it. When, therefore, the lessor retains the keys, and at the same time notifies the lessee that he will hold him for the rent, there is no room for the presumption of a surrender. Nor does the renting of the premises to another tenant under such circumstances raise such presumption, for the reason that it is manifestly to the lessee's interest that they should be occupied. The landlord

may allow the property to stand idle, and hold the tenant for the entire rent; or he may lease it and hold him for the difference, if any.   It was said in Breuckmann *v.* Twibill, 8 Norris 58, that "taking possession, repairing, advertising the house to rent, are all acts in the interest and for the benefit of the tenant, and do not discharge him from his covenant to pay rent."   Much more is it to the interest of the tenant for the landlord to rent the premises.   If at the same rent, the tenant is entirely relieved; if at less, he is liable only for the difference.

Upon the trial in the court below the learned judge instructed the jury, as set forth in the second assignment of error, as follows: "If a man refuses to continue your tenant, gives up the house into your hands, why, then, you have a right to put a bill upon the house and try to rent it; because, if you rent it, it is so much saved to Mr. Auer, so much saved to the surety of the tenant, because you have to give an account of every cent you make out of the house; and certainly it is much better for the tenant, that the landlord should rent the house and get something for it, than to simply lock the door and lay by and sue the tenant or surety for the whole amount of the rent for the whole term for which he has taken it; so that, being for the benefit of both parties, it is no presumption that the landlord has accepted a surrender, that he has taken and leased the house."

We see no error in this.   It is good sense as well as good law.

We are not aware of any authorities in this state which are in conflict with the foregoing views.   Those cited on behalf of the defendant below certainly are not.

The remaining assignments do not require discussion.   The fifth does not fully state the ruling of the court below.   As it appears in the bill of exceptions it is entirely correct.

Judgment affirmed.