## Shand *v.* McCloskey, Appellant.

*Landlord and tenant—Rent—Covenant—Surety—Principal and surety.*

A lessee is not relieved of his covenant to pay rent because a corporation of which he was manager went into possession of the demised premises, where there is no evidence to show that the lessor released the lessee from his covenant, or accepted the corporation as a tenant in his place and stead.

Where a lease provides for a renewal at the end of the term upon three months' notice by the lessee, and the lessee serves such notice, the surety of the lessee cannot thereafter relieve himself from liability for the rent on the renewed term by notice to the lessor that he would not be liable for such rent.

Argued Dec. 8, 1904. Appeal, No. 175, Oct. T., 1904, by defendant, from judgment of C. P. No. 4, Phila. Co., March T., 1901, No. 3053, on verdict for plaintiff in case of James Shand,

Peter T. Watt and Charles A. Fondersmith v. James F. Mc-Closkey.   Before RICE, P. J., BEAVER, ORLADY, SMITH, POR-TER, MORRISON and HENDERSON, JJ.   Affirmed.

Assumpsit against a surety for rent.   Before CARR, J.

The facts are stated in the opinion of the Superior Court.

Verdict for plaintiff for $1,386.50, subject to question of law reserved : " Whether there is any evidence which ought to be submitted to the jury on any fact essential to the defendant's defense."

The court entered judgment on the verdict.

*Error assigned* was in entering judgment on the verdict.

*William F. Johnson*, for appellant, cited : McGee v. Man-hattan Life Ins. Co., 92 U. S. 93 ; Simonson v. Grant, 36 Minn. 439 (31 N. W. Repr. 861) ; Smith v. U. S., 69 U. S. 219 ; Hagood v. Blythe, 37 Fed. Repr. 249 ; Gray v. Kaufman Dairy etc., Co., 162 N. Y. 388 (56 N. E. Repr. 903) ; Dickson v. Wolf, 5 W. N. C. 37 ; Williams v. Downing, 18 Pa. 60 ; Dewey v. Dupy, 2 W. & S. 553.

*Henry Spalding*, of *Fell & Spalding*, with him *W. U. Hensel*, for appellees, cited : Auer v. Penn., 99 Pa. 370.

OPINION BY MORRISON, J., January 28, 1905 :

In this case verdict was entered for the plaintiff on May 4, 1904, for $1,386.50, subject to the point reserved : " Whether there is any evidence which ought to be submitted to the jury on any fact essential to the defendant's defense."   On June 7, 1904, the court filed an opinion and ordered judgment to be entered for the plaintiffs on the verdict.   And the defendant appealed.

On August 22, 1899, the plaintiffs, by written lease, let to S. Edgar Trout, certain premises in Lancaster county, Pennsyl-vania, for a period of nine months from September 1, 1899, and ending June 1, 1900.   The written lease gave to Trout the privilege of renewing it for a period of three years from its ex-piration, provided, he gave three months' notice of his desire to do so to the lessors.   The covenant on this point is this : " Lessee is to have the privilege of renewing this lease for a

period of three years from its expiration, upon the same terms; provided that he give notice to the lessors of his intention so to do at least three months before the expiration of the term of this present lease." Attached to the lease was the following: "For a valuable consideration I hereby become security for the payment of the above rent as often as the same shall become due. Witness my hand seal this 22nd. day of August, A. D. 1899. J. F. McCloskey (Seal) 212 New St., Philadelphia. Witness present: J. Daniel Eby."

On February 24, 1900, S. Edgar Trout gave due and formal notice to the plaintiffs of his desire to continue the lease for a term of three years from June 1, 1900.

The appellant contends that Trout did not lease the property for himself but for a contemplated corporation, to be known as "The Art Wall Paper Company;" that this company was never organized and the lease was never assigned to it; that Trout retained the lease in his possession and formed a corporation under the laws of New Jersey, called "The Lancaster Paper Mills," but the lease was not assigned to it; that with the consent of plaintiffs the latter company went into possession of the demised premises in September 1899 and occupied the same down to and including the date of the last charge for rent; that Trout never went into possession under the lease, nor did he ever attempt to assign the same or to sublet to anyone; that all the rent paid was by the tenants in occupancy, The Lancaster Paper Mills; and that the action was against defendant, surety under the lease to Trout, to recover the rent that The Lancaster Paper Mills did not pay during their occupancy of the premises.

The written lease is between the plaintiffs and S. Edgar Trout, and it makes no mention of any other party or that Trout did not enter into it for himself. Moreover, it expressly prohibits any underletting or transfer without the written consent of the lessors.

The defendant, at the close of the testimony, presented eleven written points to the court for instruction to the jury and the learned court having refused all of these points, the counsel has ten assignments of error based upon said points and the action of the court in refusing to enter judgment for the defendant, non obstante veredicto.

The first assignment cannot be sustained because there is not sufficient evidence to warrant the finding of the material facts raised therein. None of the other assignments can be sustained because, under the evidence, Trout was the lessee and the defendant was his surety, unconditionally bound to pay the rent as often as it became due and the testimony does show that Trout went into possession, either for himself or as manager of The Lancaster Paper Mills, and that he remained in possession, and the property was used by him, or under his direction, and there is not sufficient evidence to show that the plaintiffs ever released Trout from the payment of the rent, nor that they accepted The Lancaster Paper Mills, or any other tenant, in his place and stead. There is some evidence that the latter company paid some rent on the Trout lease, but it is not pretended that it was not all credited, nor is it contended that the rent recovered in the present action was ever paid. We think the defendant ought not to complain of this corporation for paying a portion of Trout's rent and thus relieving the defendant from that much of his responsibility.

The position of the appellant, that the surety is not liable because the lessee did not go into possession, is not sound for two reasons: 1. The evidence shows that Trout did go into possession and remained in possession continuously. 2. Under the law, Trout would not be relieved of the payment of the rent if he did not go into possession, provided he was not prevented nor hindered by the plaintiffs. Upon this point counsel for appellant cites: Sennett v. Bucher, 3 Penrose & Watts, 392, but the principle discussed and decided in that case does not rule the present one. In that case ROGERS, J., said: "In legal contemplation the right to the possession is in the lessor as against a third person, until the contract is consummated by the entry of the lessees. When entry is made, such a right of possession is transmuted from the lessor to the lessee, as will enable the latter to maintain ejectment, under the act of 1806, and at common law." This falls far short of sustaining the defendant's contention.

Counsel also cites Dewey v. Dupuy, 2 W. & S. 553. In that case SERGEANT, J., said: (p. 556) "The second question is on the merits of the case set forth in the defendant's affidavit. The substance of it is, that before taking possession

under the lease he assigned it over, and that the plaintiff recognized the assignee as his tenant, and received rent from him. This constitutes no defense. It is well settled that when there is an express covenant by the lessee to pay the rent, he is liable in an action of covenant during the lease, notwithstanding before the breach complained of, the interest in the lease may have been assigned, and though the lessor may have accepted rent from the assignee." We think this authority effectually disposes of the question that Trout was released because The Lancaster Paper Mills occupied the premises and paid some rent. In Auer v. Penn, 99 Pa. 370, Mr. Justice PAXTON said (p. 375) : "Nothing is better settled in Pennsylvania than that a tenant for years cannot relieve himself from his liability under his covenant to pay rent, by vacating the demised premises during the term, and sending the key to his landlord. The reason for it is that, in the absence of fraud, one party to a contract cannot rescind it at pleasure." See Reeves v. McComeskey, 168 Pa. 571 and Lane v. Nelson, 167 Pa. 602.

We are unable to discover anything in this case relieving or releasing Trout, the lessee, from the payment of the rent under his covenants in the lease. Nor can we see any reason why the defendant, his surety, is not liable for the rent accrued which was not paid by Trout nor by anyone else.

The notice given by the defendant that he would not be liable for the rent after June 1, 1900, is of no consequence, for the reason that he became surety for the payment of the rent with knowledge of the covenant that the lessee could renew or extend the same for an additional term of three years. His liability was fixed when he executed and delivered the agreement of surety and he cannot change that after the delivery of the lease and the premises to Trout and the acceptance of his suretyship by the plaintiffs.

Moreover, when the appellant gave the notice on February 28, 1900, that he would not be responsible for rent accruing after June 1, 1900, the lessee had already exercised his right to continue the lease in force for the term of three years from June 1, 1900, by serving notice on the lessors, in February 24, 1900, in accordance with the terms of the contract. This had the effect, in law, of continuing the lease for said

additional term and the lessors had no power to terminate it sooner. It was not a contract which required the united wills of both parties to concur in its continuance. But, on the contrary, the lessee alone had the power to continue the lease in force for the additional term by simply giving the notice provided for in the lease.

When the appellant gave the notice of February 28, 1900, if the lessors could have lawfully terminated the lease on June 1, 1900, without the consent of the lessee, or if they could have demanded new surety, and in default of it being furnished, terminated the lease, in that case equity might have relieved the surety. In Pleasanton's Appeal, 75 Pa. 344, Chief Justice AGNEW said (p. 346) : " But the contract was severable at the will of either party and the united wills of both were necessary to concur in its continuance. It is this feature which enables equity to take hold of it, and prevent a renewal to the prejudice of the surety's estate, on the ground that the change in the circumstances of the party demanded a termination of the relation of the surety, in justice and good conscience."

In Coe v. Vogdes, 71 Pa. 383, the syllabus of the case, in part, is as follows : " A surety became bound for a tenant's performance of a contract of lease for one year, the rent payable monthly, and if tenant continued after the term, the contract to continue for another year. Held, if the tenant held over the year, the surety was responsible for the subsequent rent." " A mere notice by surety that he would not be liable was no defense ; he could not dissolve the contract at his pleasure." Upon this subject see Reading Trust Co. v. Jackson, 22 Pa. Superior Ct. 69. Also Schackamaxon Bank v. Yard, 150 Pa. 351.

We are of the opinion that, both upon authority and evidence, the plaintiffs clearly established their right to recover, and that the court committed no error in entering judgment upon the verdict.

The assignments of error are all dismissed and the judgment is affirmed.