## Staskin v. Powell

*Albert E. Smith*, for plaintiff.
*Donald S. Guthrie*, for defendants.

234

DIGGINS, J., June 8, 1965.—The above captioned matter is presently before the court for disposition of defendants' amended petition to open judgment, evidence and testimony having been offered thereon at a hearing held on December 15, 1964.

Plaintiff and defendants, in July 1958, entered into a lease covering premises situate at 14 East 7th Street, Chester, Delaware County, Pennsylvania, for a term of five years, which term was to expire July 31, 1963. In June of 1959, defendant-lessees requested that a corporation known as the Greystone Diner Corporation, be added as a party-lessee to and sub-lessee of the lease; plaintiff agreed and by a written agreement, this was accomplished. Thereafter, Greystone took possession of the premises and operated a diner thereon until the Spring of 1962, at which time, because of financial difficulties, Greystone filed for bankruptcy under chapter XI of the Bankruptcy Act. A trustee was appointed for Greystone and Greystone was operated by the trustee until October 12, 1962 when Greystone was finally adjudicated a bankrupt and the diner closed.

Plaintiff received rent for the leased premises from Greystone or its trustee until October 12, 1962. On June 25, 1963, plaintiff confessed judgment against defendant, alleging a default in rental installments commencing on February 1, 1963, and thereafter, a total of six months, in addition, inter alia, in assessing damages, an item was added for the cost of restoring the premises to good order and condition in accordance with paragraph 36 of the lease. The total assessed damages were $3,519. Although counsel for defendants questions one of the items of damage, the cost of restoration, in his brief, no question was raised or evidence introduced in connection therewith at the time of the hearing and thus the court is unable to consider this as an issue. Plaintiff makes no claim for rentals between

October 1962 and February 1, 1963, and has given defendants credit for rent received until February 1, 1963.

Defendants contend that the judgment should be opened because of an alleged surrender of the leased premises by defendants and an acceptance thereof by plaintiff, thereby terminating the defendants' obligations under the lease. In support of this contention, defendants rely on the following circumstances:

(1) Prior to October 12, 1962, when Greystone was finally adjudicated a bankrupt, but during the autumn of 1962, one of the defendants, Dixon Powell, and his accountant, Melvin Rudman, visited plaintiff to discuss the possibility of plaintiff leasing the premises to another party, Mrs. George Workman, with whom negotiations were then pending concerning the sale of the diner's assets. Plaintiff indicated, according to Mr. Rudman and Mr. Powell, that he had accepted six months' rent in advance ". . . . . from the present tenants and was obliged to honor them because even if they lost the diner through either the bankruptcy proceedings or replevin proceedings, that the people there could put a new diner on and that he had committed the ground to these people and that he accepted six months' rent in advance," Mr. Rudman further stated that plaintiff had indicated that he had committed himself by accepting this advance rental and was not able to allow Mr. Powell to negotiate for the sale of the diner; this transpired prior to any rental default; and

(2) On November 2, 1962, Edmund Jones, Esq., representing Mr. George Workman, conferred with Albert E. Smith, Esq., plaintiff's attorney, in an attempt to negotiate a lease covering the subject premises on behalf of Workman. During this conference, Mr. Jones indicated to Mr. Smith that the lease ran only to July 31, 1963, and that Mr. Workman would be

investing substantial monies in the diner and for that reason would not be interested unless the lease would run beyond July 31, 1963. Shortly thereafter, Mr. Smith advised Mr. Jones that plaintiff had made arrangements with third parties for the rental of the subject premises.

The record indicates that although plaintiff endeavored to enter into another lease, that lease was never consummated and the monies received on account thereof were credited to defendants; that defendant, Powell *after* the aforesaid discussion with plaintiff, paid, on demand, certain taxes due under the lease; that plaintiff was not the owner of the subject premises, could not guarantee a long term lease, and that defendants could renew their lease from plaintiff if plaintiff was able to renew his lease from the owner as set forth in the lease; and that plaintiff, as lessor under the terms of the lease, could, inter alia, in the event of the filing of a petition in bankruptcy by or against the lessee, lease the premises to others in which event the lessee would be liable for any loss of rental for the balance of the then current term.

As aforesaid, defendants contend that the judgment should be opened because of an alleged surrender of the leased premises and an acceptance thereof by plaintiff, thereby terminating defendants' obligations under the lease. Based on the evidence adduced at the hearing, however, we conclude that defendants' position is without merit. Very simply stated, defendants rely on the proposition that since plaintiff refused or was unwilling or unable to enter into a lease with one George Workman because of having accepted rent, ostensibly from the present tenants (Greystone or those interested therein), the lease was abrogated and defendants released from their obligations thereunder. With this conclusion, we cannot agree, especially in light of plaintiff's obvious attempt, in the instant case, to mitigate damages.

In Ralph v. Deiley, 293 Pa. 90, a somewhat analogous situation was presented. There appellants (lessors) leased certain premises to appellees who organized a corporation of the same name which, without an assignment, conducted business on the premises. The corporation failed, receivers were appointed and thereafter counsel for receivers notified lessors that the premises would be surrendered on a given date when the lease still had two years to run. Lessors thereafter relet the premises and sued lessees for the difference between the rent received and the balance of the rent due under the first lease. Appellees contended that there had been a surrender of the lease through a reletting of the property. In rejecting this contention, the court said:

"We had occasion to review some of the questions before us in Jenkins v. Root, 269 Pa. 229, 231. We pointed out that 'care must be taken to distinguish cases in this State where it has been held that a second lease may exist for the same premises and for the same term, where the first lessee, without right, abandons the possession. [In such cases,] the landlord may resume possession and rent or repair the property, in the interest of the first tenant, who remains liable for any defalcation or deficiency in the rent, and the joinder of the first lessee in securing another tenant will not work a surrender in law unless the owner agrees thereto: Auer v. Penn, 99 Pa. 370; Lipper v. Bouve, Crawford & Co., 6 Pa. Superior Ct. 452.'

"Nothing is better settled in Pennsylvania in the law of landlord and tenant than that a tenant for years cannot relieve himself from liability under his covenant to pay rent by vacating the demised premises during the term and sending the key to the landlord. The reason for this is, one party to a contract cannot rescind it at pleasure: Auer v. Penn, supra.

"When the lessee quits the premises with an intention to give up all rights to them, and to disengage him-

self from liabilities springing from the contract of lease, to make his effort effectual he must procure the lessor's assent, or, in other words, there must be a surrender. A surrender is the yielding up of an estate for years to him who has the immediate reversion, and the effect is to pass the estate of the tenant to the landlord, extinguishing the rent reserved: Milling v. Becker, 96 Pa. 182, 185. Surrender is a contractual act, and it occurs only through the consent of both parties, evidenced by an express agreement or unequivocal act of the parties which implies that they have agreed to consider the surrender as being made: Felker v. Richardson, 32 Atl. 830, 831, 67 N. H. 509, 510. Where assent has been given orally or in writing, no question can arise. The dispute occurs over the acts of the landlord as evidencing assent to the abandonment or a surrender of demised premises by implication of law. To show it there must be evidence of acts so inconsistent with the terms of the first lease that the relation of landlord and tenant, established by the reletting, could not be enforced under the terms of the first lease. Such acts would indicate as a logical and reasonably necessary result that the lessor intended to accept the surrender tendered by the lessees: Whitcomb v. Brant, 90 N. J. L. 245, 100 Atl. 175. These acts must be distinguished from acts of the landlord in protection of the property after an attempted surrender. The burden of showing such acceptance is on the lessee: (Auer v. Penn, supra; see also 35 C. J. 1094), and is primarily a question of the landlord's intention. It is usually a question of fact for the jury (Breuckmann v. Twibill, 89 Pa. 58), but the evidence may be such as to make it one of law for the courts.

"The lessees contend there is a surrender through the lessors' neglect to protest or to notify them that they would not accept the abandonment. The court below instructed the jury such notice was necessary.

This is not the law. The result of such instruction is to make every quitting or abandonment of the premises effective as a surrender unless such notice is given. The landlord is not required to protest against an abandonment of the demised premises: In re Mullings Clothing Co., 238 Fed. 57. . . .

"The lower court was in error in not holding, first, that it is not necessary for a landlord to notify a tenant abandoning the property that he will not accept the surrender and will hold him for the rent for the balance of the term; second, that it is not necessary for the landlord to notify the lessee on reletting during his term that the reletting is for his benefit to minimize his loss; and third, that a reletting within the terms of the first lease is not such an equivocal act as to indicate an intention on the part of the lessor to accept the surrender of the property."

The Superior Court, in Brill v. Haifetz, 158 Pa. Superior Ct. 158, after referring to the Ralph v. Deiley, supra, case, appositely said:

"It cannot be gainsaid that plaintiffs breached the contract, and that the defendant was entitled to some damages. The parties themselves in their contract determined upon the measure of damages for which the tenant would be liable in event of his breach of the contract. A covenant in the lease states that if the tenant violates its terms the lessor may lease part or parts of the premises 'to such person or persons as may in lessor's discretion seem best, and the lessee shall be liable for any loss of rent for the balance of the then current term.' She was thus given free power of decision within reasonable bounds to rent the premises upon such terms and subject to such conditions as she deemed wise. It cannot be said as a matter of law that by doing what these appellants authorized her to do they are released of liability because she accepted a surrender of the premises. We concede that the making

of a new lease by a landlord during the existence of an outstanding lease and in hostility thereto, and the tenant giving up possession effects a surrender by operation of law: Jenkins et al. v. Root, 269 Pa. 229, 112 A. 153. That is not this case. The lessor's rerenting was not incompatible with the lease, but in compliance with it. Nor did she ever consent, either expressly or impliedly, to the tenants' violation of the lease or relieve them of liability thereunder. She carried out her duty of doing what she could to minimize the damages by putting up a 'for rent' sign and advertising for a tenant in the newspaper. By making some changes she leased the premises at a reasonable rental, which was to the advantage of the plaintiffs."

We therefore make the following

ORDER

And now, to wit, June 8, 1965, upon consideration of the record and pleadings relative to the above captioned matter and after hearing, it is ordered, adjudged and decreed that the rule heretofore entered on March 25, 1964 against plaintiff to show cause why the judgment entered in the above entitled cause should not be opened and defendants let into a defense be and the same is hereby dismissed.