**In re Michael J. PASKORZ, Debtor.**

**Michael J. Paskorz, Movant,**

**v.**

**JMK Realty, Respondent.**

**Bankruptcy No. 01–20290–JKF.
Motion No. LBH–2.**

United States Bankruptcy Court,
W.D. Pennsylvania.

Oct. 24, 2002.

---

Laurel Hartshorn, Saxonburg, PA, for Debtor.

Roger M. Bould, Pittsburgh, PA, for JMK Realty.

## MEMORANDUM OPINION [1]

JUDITH K. FITZGERALD, Chief Judge.

Before this court is Michael J. Paskorz's ("Debtor") Objection to Claim of JMK Realty Company ("Lessor"). Debtor objects to Lessor's claim on the basis that allowance will constitute double recovery for Lessor, which "violates basic contract law and the plain and ordinary meaning of the Bankruptcy Code." Objection to Claim, Docket No. 34, at 2. Lessor claims damages under 11 U.S.C. § 502(b)(6) in the amount of $33,600.00. The Lessor also asserts an administrative claim of $5,200.00 and a prepetition claim of $5,000.00. The prepetition claim has not been challenged in this motion.

Debtor entered into a lease with Lessor in 1999 for a term of four years. On January 10, 2001, Debtor filed for bankruptcy under Chapter 13. Sixty days later, on March 11, 2001, Debtor rejected the lease by operation of 11 U.S.C. § 365(d)(4). Lessor filed a claim in the amount of $43,800.00, which includes prepetition rent, postpetition pre-rejection rent, and the § 502(b)(6) amount for the

---

1. The court's jurisdiction was not at issue. This Memorandum Opinion constitutes our findings of fact and conclusions of law.

balance of the lease term which Lessor claims equals the total rent due under the lease for the balance of the term. The base monthly rent under the lease was $2,600 per month through March of 2001 and $2,800 per month thereafter for the remainder of the lease. Debtor vacated the premises on an unspecified date[2]. At the December 20, 2001, hearing on this matter, Lessor stated it had relet the premises to a third party in May 2001. The third party still occupied the property at the time of this hearing. Lessor relies on § 502(b)(6) and states there is no requirement in the Bankruptcy Code that forces a lessor to mitigate damages when a debtor rejects a lease. Lessor, therefore, asserts entitlement to its full claim of $43,-800.00[3], $5,200.00 of which it alleges should be a priority administrative claim, for the amounts unpaid in the 60 day post-petition, pre-rejection period. The landlord alleges it relet the premises to a third party tenant after the rejection, although we have not been provided a date on which the new tenancy commenced. Without this date, the court is unable to calculate the exact monetary damages.

Although the parties did not provide a date upon which the premises were relet, Lessor's counsel stated at a December 20, 2001, hearing that the property was relet in May 2001. Debtor did not dispute that date. For purposes of this opinion, therefore, the court will assume that the new tenancy began on May 1, 2001, and will use that date to calculate damages.[4] Assuming the new tenancy began on May 1, 2001, and finding that the lease was rejected on March 11, 2001, Lessor is entitled to rejection damages of unpaid rent from March 11, 2002, through April 30, 2001. The landlord's entry into a new lease with the third party began on May 1, 2001, thereby terminating Debtor's lease according to the terms of the lease. The post-rejection, pre-termination amount of rent due under the lease is $4,561.29.[5]

Because Lessor relet post-rejection, damages do not rise to the level of the claim, asserted to be $43,800.00. The lease itself, while requiring Debtor to pay rent for the balance of the term, states that Lessor may relet the premises and apply all rent received to Debtor's payment obligations. Thus, the lease contemplates mitigation. Even if the parties had not agreed to mitigation of damages under the lease, Lessor's obligation to mitigate damages would still exist. See *In re New York City Shoes, Inc.*, 86 B.R. 420 (Bankr. E.D.Pa.1988). The court in *New York City Shoes* determined that the Pennsylvania Supreme Court would treat a real estate lease like any other contract and would require mitigation.[6] *Id.* at 421. Using that analysis, Lessor is not entitled to recover damages it could have avoided with reasonable efforts. *Id.* at 424.

Lessor argues that the plain and ordinary meaning of § 502(b)(6) does not re-

---

**2.** The court recognizes that, while parties do not provide an exact date, they agree that Debtor had vacated the premises at the time of reletting.

**3.** The components of its claim are: $5,000.00 pre-petition rent, $5,200.00 post-petition, pre-rejection rent, and $33,600.00 under § 502(b)(6).

**4.** If there is additional information that the property was relet on a different date, the parties may file an appropriate pleading to address the issue.

**5.** This amount was calculated by adding rent due in April ($2,800.00) and the prorated rent for the month of March ($1,761.29).

**6.** "[A] lease is in the nature of a contract and is to be controlled by contract law." *In re New York City Shoes, Inc.*, 86 B.R. at 424, quoting *Pugh v. Holmes*, 486 Pa. 272, 405 A.2d 897, 903 (1979).

quire a mitigation of damages, thus entitling Lessor to its full claim. It cites to *In re Fifth Avenue Jewelers, Inc.*, 203 B.R. 372 (Bankr.W.D.Pa.1996), to make this argument, contending that the statutory cap is computed without consideration of mitigation. However, the *Fifth Avenue* court states: "mitigation shall figure into the calculation of [lessor's] damages prior to application of said cap." *Fifth Avenue*, 203 B.R. at 381. Computing the limitation of § 502(b)(6), the court awarded the lessor actual damages after mitigation plus reletting costs. The court noted that the landlord is entitled to only one satisfaction of its claim and cannot be compensated twice for one claim. In this case Lessor did, in fact, mitigate by reletting to the third party and such mitigation will be considered as of the date of the new tenancy (i.e., assumed to be May 1, 2001). The Lessor reduced its claim against this estate to $0 for the period after a new tenant took possession of the leasehold. Lessor is not entitled to collect rent twice for the same space.

■ We have examined § 502(b)(6) of the Bankruptcy Code, which the Lessor cited in support of its argument that its damages should not be reduced by any amounts that it received through leasing the property to a third party prior to the end of the contracted term of Debtor's lease. Legislative history of this section of the Code discloses that it is "designed to compensate the landlord for his loss while not permitting a claim so large . . . as to prevent other general unsecured creditors from recovering a dividend [from] the estate." *In re Lindsey*, 1997 WL 705435 at *3 (4th Cir., Nov.7, 1997) (No. 96–2268). Compensation for loss should not be more than the amount Debtor would have paid Lessor but for the petition filing and subsequent rejection of the lease. If the parties have evidence that proper steps toward mitigation were not taken, they may request an evidentiary hearing.[7] Thus, Debtor owes nothing as of the date the subsequent lease took effect, unless Lessor relet for an amount less than Debtor's rent. If Debtor paid more in rent while under the lease than the third party now does, Debtor will owe the difference through the end of Debtor's original lease period, March 31, 2004, subject to the statutory cap. The court has not been asked to make this calculation in the pending matter.

■ Lessor also asserts an administrative claim for $5,200.00. Lessor is entitled to a post-petition, pre-rejection unpaid rent award. Although Lessor fails to plead any facts to support its administrative claim or to show that the claim arises "out of a post-petition transaction between the creditor and the debtor-in-possession" and that "the consideration supporting [Lessor's] right to payment was supplied to and beneficial to the debtor-in-possession in the operation of the business", *In re Merry–Go–Round Enterprises, Inc.*, 180 F.3d 149, 157 (4th Cir.1999), its claim survives due to 11 U.S.C. § 365(d)(3). Congress enacted § 365(d)(3) to force trustees to perform debtor's duties under a lease while pending assumption or rejection of that lease. *See In re Montgomery Ward Holding Corp.*, 268 F.3d 205 (3d.Cir.2001). Lessor asked the court to award full rent for February through March. *See* attachment to Amended Proof of Claim. Under *Montgomery Ward* the landlord is entitled to full payment of the monthly rent when it is due under the contract. Here, rent is due on the first of each month. Thus, the rent for the month

---

7. The court notes that there is no allegation or evidence that Lessor did not employ reasonable efforts to relet the property after rejection.

of January is a prepetition unsecured claim. Rent owed for February and March is a postpetition administrative expense obligation, totaling $5,200.

In summary, Lessor is entitled to rejection damages of $4,561.29 and to administrative rent of $5,200.00. All other possible rejection damages have been mitigated by Lessor's reletting the premises to the third party.

An appropriate order will be entered.

## ORDER

**AND NOW**, this 24th day of **October, 2002**, for the reasons expressed in the foregoing Memorandum Opinion, it is **ORDERED, ADJUDGED, and DECREED** that Debtor's objection to claim is sustained in part and JMK Realty has allowed claims as follows: an administrative priority claim of $5,200; an unsecured claim of $4,561.29 as rejection damages, and $5,000 as a prepetition, unsecured claim for unpaid rent. The total allowed claim is $14,761.29.

**IT IS FURTHER ORDERED** that the parties may seek reconsideration within 20 days hereof if the new tenancy began on a date other than May 1, 2001, and/or if the new tenant's rental obligation is less than Debtor's would have been through March 31, 2004.