## Milling *versus* Becker.

1. The declaration of a landlord that his tenant had given up his lease, accompanied by an unsuccessful attempt to lease to another, is not conclusive evidence that the relation has ceased. There must be an agreement to rescind or the lease continues in force.

2. Mere removal of a tenant with an unaccepted offer to deliver the key is not evidence of the termination of the lease.

3. Taking care of the key and cleaning the windows of a house after the tenant had left, are not conclusive evidence of the landlord's acceptance of a surrender.

4. If the relation of landlord and tenant has not ended by contract the landlord is not bound to rent to another during the lease, for the benefit of his tenant.

5. If a tenant rents by the month he has the right to terminate the lease at the expiration of any month, but he is bound to pay the rent for that month, unless there was a surrender. The tender of a half month's rent is not sufficient, although the premises have not been occupied for that portion of the month.

November 9th 1880. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Error to the Court of Common Pleas, No. 2, of *Allegheny county*: Of October and November Term 1880, No. 163.

Case by Charles Milling against Annie Becker.

The action was to recover rent from October 1st 1878 to April 1st 1879, for certain premises in the city of Pittsburgh, of which the plaintiff was the owner, and which he alleged the defendant rented from him by a verbal lease from May 1st 1873 to April 1st 1874, at a rent of $20 per month, payable monthly, and that after the 1st of April 1874 the defendant held over and continued to occupy the premises. Plaintiff further alleged that about April 1st 1876, additional rooms were rented by him to the defendant, and her rent increased to $25 per month, payable monthly, as before, and that she continued, under the terms of the original lease, to occupy the premises until October 7th 1878, when she removed therefrom, paying the rent to October 1st 1878.

The defendant alleged that when she rented the premises in 1873 she told Milling she was a stranger in the city and did not know whether she would be able to pay the rent or not, and that therefore she would not rent the premises in any other way than by the month, and that plaintiff readily agreed to this arrangement, and that thereunder she moved in and remained his tenant, without any change in the lease, until October 7th 1878. That at that time she paid the rent in full to October 1st 1878; tendered to plaintiff over half a month's rent for the seven days she occupied the premises after the 1st of October, and left the key with the plaintiff in person and removed from the house. It also appeared that plaintiff never made any demand on defendant

[Milling v. Becker.]

for the rent as it fell due, and that there were other acts to show an acceptance of the surrender tendered. It also appeared by plaintiff's own testimony that he not only did not try to rent the premises after defendant removed, but that he positively refused to rent the same to several parties who called upon him for that purpose, and that he did not report these parties to defendant, but gave to them all an unqualified refusal.

The verdict was for defendant, and after judgment plaintiff took this writ and alleged that the court erred as follows:

1. In charging the jury: "She claims that she rented by the month, and only by the month, stating that she was a stranger; that she did not know how her business would succeed; that she would not involve herself for a longer period than a month, and that she rented by the month, to be payable monthly, and on no other terms, and for no fixed time. I might say just here that if that is discovered to be the fact, then if you find that all the rent has either been paid or tendered at the time this key was left with Mr. Milling, there can be no recovery, and there ought not."

2. In charging the jury: "It all devolves upon the question whether she was simply a monthly renter, without any fixed time to such monthly rental. If there was a contract to that effect agreed upon by the parties without limit as to how long it would run, I then say to you that if she tendered all the rent that was due, and you so find, she had a right to go out as a monthly renter at the expiration of any month that she might see proper."

3. In charging the jury: "If it be as Mr. Milling claims, why then she ought to pay and must pay until the end of the year, unless Mr. Milling was guilty of neglect and might have rented but did not."

4. In affirming defendant's first point: "That if the jury find from the evidence that when defendant first leased from plaintiff the premises in question, that she rented them by the month, and that no agreement changing this tenancy was afterwards made; that defendant continued to occupy said premises as a monthly tenant up until the date she moved, and that their verdict must be for the defendant.

5. In affirming defendant's second point: If the jury find from the evidence that at the time plaintiff accepted the key of the premises and demanded and received the month's rent necessary to balance accounts in full to October 1st 1878, he intended to accept the surrender so made, defendant was then and there released, and no subsequent act of plaintiffs at any time performed could again make her liable, and that the verdict must be for defendant.

6. In affirming the defendant's third point, that plaintiff was bound to use his utmost endeavors to rent the premises in question

between November 12th 1878 and April 1st 1879 for the relief of defendant.

*Robb & Fitzsimmons*, for plaintiff in error.—If Mrs. Becker was a monthly renter, then she could not remove in the middle of a month without payment of rent for a month, unless the landlord released her. If she was a tenant by the year, and left the premises after an occupancy of the same for several months, what principle of law can be invoked that will compel the landlord to submit to her unlawful acts, and compel him to diligently search for some one who would occupy the premises for the balance of her term, pay the rent she was obligated to pay, and relieve her entirely of liability. In the fifth assignment of error the court was led to say, in the point submitted by defendant's counsel, "that Milling accepted the key of the premises." There is nothing further from the facts in the case. The key was left by the tenant with the landlord, Milling, who neither received nor accepted the key. The agents of the defendant, when they paid the rent to November 1st 1878, left the key on plaintiff's table when they left, with their receipt for the said payment. It is well settled that a delivery of the key is not a delivery or surrender of the premises. There was nothing said by the defendant or her agents that by leaving the key she surrendered the premises, or that Milling, when the key was left with him, said or otherwise indicated that he accepted the surrender of the premises, and relieved the defendant from the payment of the rent.

*Burleigh & Harbison*, for defendant in error.—All the testimony sustains the allegation of defendant that she was a monthly tenant. During the whole of these six months, for which plaintiff now claims to hold the defendant liable, he deliberately and persistently refused to rent these premises, even when many parties came to him and desired to rent from him. He made no personal demand on defendant for the rent as it fell due month by month, or at any time, and by taking the key, by acting as if in possession, by failing to demand her rent monthly, as he had done for six years prior to this time, he caused defendant to almost forget that she formerly was his tenant. Certainly his actions had been such as to daily inform her that he had ceased to regard her as his tenant, and the many other facts in the case prove an acceptance of a surrender, show conclusively that this plaintiff's actions deceived the defendant and threw her entirely off her guard.

Mr. Justice TRUNKEY delivered the opinion of the court, November 22d 1880.

These parties disagree on the question whether the letting of the premises was by the month or year, and on this the conflicting tes-

[Milling *v.* Becker.]

timony was fairly submitted. But the testimony on all contro-
verted questions might as well not have been submitted at all, for
the jury were instructed that on the case, as claimed by the plain-
tiff, the defendant ought to pay rent until the end of the year,
unless the plaintiff was guilty of neglect and might have rented,
but did not, and that he was bound to use his utmost endeavors to
rent the premises for the relief of the defendant; and, if the rent-
ing was by the month, the verdict must be for the defendant.
Now, the parties agreed that the plaintiff made no effort to rent the
premises to another till the end of the year ; also, that the rent
was paid up to the first of October. Therefore, the affirmance of
defendant's first and second points was decisive against the plain-
tiff.

A vital point to a complete defence was to establish a rescission
of the lease by mutual agreement. Three witnesses on part of de-
fendant said that when the last rent was paid, a few days after her
removal from the premises, the plaintiff took the key without say-
ing a word; and three witnesses on plaintiff's behalf testified that
he absolutely refused to accept the key. Probably the testimony
was sufficient to warrant submission of the question ; but it was far
from conclusive, and by no means justified instructions as if it were
an indisputable fact that there was a surrender. The declaration
of a landlord that his tenant had given up his lease, accompanied by
an unsuccessful attempt to lease to another, is not conclusive evi-
dence that their relation had ceased. There must be an agreement
to rescind or the lease continues in force, and the acts and declara-
tions of the parties tending to prove such agreement are for con-
sideration of the jury. Mere removal by a tenant with unaccepted
offer to deliver the key, is not evidence of a termination of the
lease : Kiester *v.* Miller, 1 Casey 481. Taking care of the key of
the house and repairing the floor after the tenant had voluntarily
left, were no eviction. He would have been entitled to enter if he
had returned : Pier *v.* Carr, 19 P. F. Smith 326. So, taking care
of the key and cleaning the windows of a house after the tenant
had left, would not be conclusive evidence of the landlord's accept-
ance of a surrender.

The effect of a surrender is to pass the estate of the tenant to
the landlord, which results in extinguishment of the rent reserved
and accruing out of the less estate not due at the time of the sur-
render : Greider's Appeal, 5 Barr 422. Hence, if there was an
agreement for surrender made in October between Milling and
Mrs. Becker, no rent which was not then due can be recovered;
but if there was no such agreement whether the term was for a
month or a year, the plaintiff was entitled to the rent until the end
of the term. In case of a surrender, it was immaterial whether the
plaintiff did or did not rent the premises to another ; and if the
relation of landlord and tenant was not ended by contract, he was

[Milling *v.* Becker.]

not bound to rent to another during the term for relief of the defendant. Nothing in the original contract obligated him to seek another tenant, and had he done so and put one in possession of the premises, he could recover no rent of the defendant accruing thereafter. That, indeed, would have relieved the defendant—a most absurd thing for him to do if he wished to hold his contract with her. She alone had as little power to terminate her obligation to pay rent until the end of the term as she had to make the lease. It takes as many persons to rescind a contract as it took to make it, unless it contains a stipulation that it shall become void upon a contingency.

The third and sixth assignments are well taken; and the first and second must also be sustained. True, if the defendant rented by the month, she had a right to end the lease at the expiration of any month, but she would be bound to pay the rent for that month unless there was a surrender. The tender of a half-month's rent at the time the key was left, was vain. If the jury found the facts mentioned in the defendant's first point, without more, the defendant was not entitled to a verdict. She moved after the first of October, and in any view was liable for the rent of that month if the contract was not rescinded. The defendant's second point assumes that the plaintiff accepted the key of the premises, and for that reason ought to have been refused. .

Judgment reversed, and *venire facias de novo* awarded.