685 A.2d 1019

**STONEHEDGE SQUARE LIMITED PARTNERSHIP,**
**Appellant (at 930),**

v.

**MOVIE MERCHANTS, INC. d/b/a Movie Merchants, Appellee.**

**STONEHEDGE SQUARE LIMITED PARTNERSHIP, Appellee,**

v.

**MOVIE MERCHANTS, INC. d/b/a Movie**
**Merchants, Appellant (at 915).**

Superior Court of Pennsylvania.

Argued Sept. 11, 1996.

Filed Nov. 25, 1996.

470

Jordan D. Cunningham, Harrisburg, for Movie Merchants.

George B. Faller, Jr., Carlisle, for Stonehedge.

Before McEWEN, President Judge, and SCHILLER and BROSKY, JJ.

SCHILLER, Judge.

In these cross-appeals, the parties appeal the orders of the Court of Common Pleas of Cumberland County finding defendant Movie Merchants liable for breach of a commercial rental lease and awarding a new trial on the issue of damages only. We affirm in part and reverse in part.

FACTS:

Appellant, Stonehedge Square Limited Partnership [appellee on the cross-appeal, hereinafter referred to as "Landlord"] owns and operates the Stonehedge Square shopping center on Walnut Bottom Road in Carlisle, Cumberland County, Pennsylvania. Landlord entered into a written lease agreement for a store in the shopping center with General Video Corporation that began on July 6, 1990 and ended on July 5, 1995. On July 31, 1992, General Video assigned the lease to Appellee Movie Merchants, Inc. [appellant on the cross-appeal; hereinafter referred to as "Tenant"]. Tenant operated a video rental store at the shopping center from July 1992 to October 27, 1994, when it vacated the premises. Landlord filed the present action to recoup unpaid rent from November 1, 1994 to July 5, 1995.

The case was tried without a jury before the Honorable Kevin A. Hess. Following the trial, the court made findings of fact as follows:

The defendant [Tenant] had notified the plaintiff [Landlord] of its intention to vacate the premises. The plaintiff, initial-

ly, expressed optimism concerning the ability to rent the property to another tenant. No final understanding was reached, however, and, in the final analysis, the defendant's departure from the leased premises was unilateral.

The defendant, upon learning that the leased premises were now vacant, permitted a realtor to pursue its re-rental. There were almost no efforts to re-rent the premises after December of 1994.

The premises remained vacant until the expiration of the lease term in July of 1995 with the exception that other leases in the mall, most notably Nell's Market, were permitted to use the former video store for the storage of equipment. Eventually, the locks were changed on the leased premises.

The trial court then made the following conclusions of law:

The surrender of the demised premises by the tenant was, in this case, not accepted by the lessor and the evidence in this case does not create the presumption of a surrender. The fact that Stonehedge took possession of the premises and used it for temporary storage does not rise to the level of adverse use to warrant an acceptance of the tenant's surrender nor does the changing of some of the locks of the leased building warrant an acceptance, particularly where the tenant remained able to enter the building through other entrances.

The circumstances of this case do not give rise to a duty on the part of the plaintiff to negate its damages by reletting the premises following the defendant's abandonment, nor is the defendant discharged from the covenant to pay rent on this account.

Slip Opinion, *Stonehedge Square Limited Partnership v. Movie Merchants, Inc., d/b/a Movie Merchants*, Court of Common Pleas, Cumberland County, No. 94–6625 at 1–2.

As a result of these findings, the trial court on August 11, 1995, found in favor of the Landlord in the amount of $46,-797.09, plus interest. Both parties filed post-trial motions. On November 22, 1995, the trial court reversed itself on the

question of damages and found that Pennsylvania law imposes a duty on lessors to mitigate damages, and ordered a new trial. Both parties have appealed these orders before this Court.

DISCUSSION:

The parties have raised, *inter alia*, the following issues: [1] (1) whether the trial court erred in finding that the Landlord had not accepted the tenant's surrender of the lease (Tenant's issue); (2) whether the trial court erred in finding that the representations of the Landlord as to the demised premises being relet did not preclude the Landlord from seeking damages under the doctrine of equitable estoppel (Tenant's issue); and (3) whether Pennsylvania law imposes a duty to mitigate on commercial lessors when the lessee breaches the lease (Landlord's issue).

 Our standard of review in a non-jury trial is clear. We must determine whether the findings of the trial court are supported by competent evidence and whether the trial judge committed error in the application of law. Additionally, findings of the trial judge in a non-jury case must be given the same weight and effect on appeal as a verdict of a jury and will not be disturbed absent error of law or abuse of discretion. *Olmo v. Matos*, 439 Pa.Super. 1, 5–6, 653 A.2d 1, 3 (1994), *alloc. denied*, 541 Pa. 652, 664 A.2d 542 (1995).

 Regarding the first issue, Tenant claims that it informed the Landlord in August, 1994, of an opportunity it had to relocate to another location and of the necessity to remove various trade fixtures from the Stonehedge Square store by the end of September. A meeting of the parties was held on September 2, 1994, where, according to Tenant, Landlord

---

1. Tenant Movie Merchants raised two additional issues that we need not address: whether the trial court erred in applying property law and not contract law in originally finding that no duty to mitigate exists in this case, and whether the trial court acted properly in allowing tenant to file post-trial motions under Pa.R.C.P. 227.1 after the ten day period prescribed in that rule. The first issue has been treated with the issue on the duty to mitigate damages. As Landlord does not allege that the trial court erred in allowing the post-trial motion, we need not address the second issue.

stated that it had no objection to the move and could re-let the premises with little difficulty. Throughout September, 1994, Tenant tried unsuccessfully to contact Landlord. On October 4, 1994, Landlord wrote to Tenant that Landlord would not consider an early termination of the lease. By that time, Tenant claims that it had already removed the fixtures. Tenant then left the premises in late October, 1994.

Approximately one month after the Tenant vacated the premises, the Landlord began storing materials in the vacated premises, including some belonging to another tenant in the shopping center. In April, 1995, the Landlord changed some of the locks. Tenant argues that these actions by the Landlord evinced an acceptance of the Tenant's surrender of the lease.

Before an act of surrender by a tenant can be held to relieve the tenant from further liability under a lease, the landlord must accept the surrender. *Hochman v. Kuebler,* 53 Pa.Super. 481, 484 (1913). When determining if a surrender of the lease occurred, the intention of the parties govern. *Lawton v. De Angelo,* 169 Pa.Super. 380, 382, 82 A.2d 900, 901 (1951). Whether the landlord accepted the tenant's surrender is a question of fact for the jury. *Id.* The burden is on the tenant to show by clear and convincing evidence that the landlord's actions constituted acceptance of the tenant's surrender. *See Brill v. Haifetz,* 158 Pa.Super. 158, 162, 44 A.2d 311, 313 (1945). It must be shown that the landlord made some "unequivocal act" that would constitute acceptance of the tenant's surrender. *Ralph v. Deiley,* 293 Pa. 90, 94, 141 A. 640, 642 (1928). According to the Supreme Court:

where a tenant, during the term [of the lease], abandons the demised premises, the landlord is not bound, under the penalty of loss of his right to receive rent, to permit the tenement to remain wholly unoccupied with the consequent possible or probable loss of his insurance, destruction by waste, or other like injuries. The mere fact that he resumes possession is not of itself a sufficient foundation upon which to predicate ... an acceptance of a surrender ... It must further be found on evidence that such resumption of

possession is not merely for the protection of the property during the absence of the tenant, but is adverse to a reoccupation of it by him and a renewal of the relations created by the lease.

*Kahn v. Bancamerica–Blair Corp.*, 327 Pa. 209, 213–14, 193 A. 905, 907 (1937) (citation omitted).

It was shown at trial that the items in question were not moved into the demised premises until approximately one month after the Tenant had vacated the store, and that the items would have been moved out of the store if the Tenant had indicated a desire to resume operation of the store.[2] In addition, only some of the locks were changed, and the tenant was still able to enter the store at will via a different door. N.T., June 22, 1995, 122. Based on this evidence, the trial court found that the Landlord's actions did not constitute such an "unequivocal act" as to constitute acceptance of the Tenant's surrender. This was a factual determination and will not be disturbed absent an abuse of discretion or an error of law. *Lawton, supra.* Neither exist here.

█ Tenant's next issue is whether the trial court should have prevented the Landlord from seeking damages under a theory of equitable estoppel. Tenant argues that the Landlord made representations that it had secured a replacement tenant for the store, or that it did not anticipate a problem in finding a replacement tenant. According to Tenant, it was in reliance on these representations that it vacated the premises and relocated to a new location.

2. Richard M. Singer, general partner of Landlord, testified on direct as follows:

Q: And you never received a call [from Tenant] asking you to move those items [placed in the store]?
A: No.
Q: If you would have received a call from Trish Greenberg or anybody at Movie Merchants saying we are prepared to move back in, what would you have done with those things?
A: If they said they were going to move back in and they brought their rent up to date, I would have moved the things that were stored in that building.

N.T., June 22, 1995, 35-36.

 Whether equitable estoppel exists in a given case is a question of law for the court to decide. *Nesbitt v. Erie Coach Company*, 416 Pa. 89, 96, 204 A.2d 473, 476 (1964). When reviewing questions of law, the trial court's conclusions of law are not binding on this court, whose duty is to determine whether there was a proper application of the law to the facts by the trial court. *Thatcher's Drug Store v. Consolidated Supermarkets, Inc.*, 535 Pa. 469, 477, 636 A.2d 156, 160 (1994).[3] "Equitable estoppel, a doctrine sounding in equity, acts to preclude one from doing an act differently than the manner in which another was induced by word or deed to expect." *Zitelli v. Dermatology Educ. & Res.*, 534 Pa. 360, 370, 633 A.2d 134, 139 (1993). It may be applied:

> where the party asserting estoppel established by clear, precise and unequivocal evidence (1) that the party against whom the doctrine is sought to be asserted intentionally or negligently misrepresented a material fact, knowing or with reason to know that the other party would justifiably rely on the misrepresentation, (2) that the other party acted to his or her detriment by justifiably relying on the misrepresentation, and (3) that there was no duty of inquiry on the party seeking to assert estoppel.

*Homart Development Co. v. Sgrenci*, 443 Pa.Super. 538, 554, 662 A.2d 1092, 1099–1100 (1995) (en banc). The doctrine is one of "fundamental fairness" and its application will depend on the facts in each case. *Id.*, at 554, 662 A.2d at 1100 (citation omitted).

In this case, a meeting was held on September 2, 1994 between Richard M. Singer for the Landlord and Patricia Greenberg and May Jane Robins for the Tenant. Tenant claims that Landlord stated that "he had a tenant. Blockbuster was very interested in our space ... And he felt that it was a very good possibility that they would take that space." N.T., June 22, 1995, 65. According to Tenant, Landlord also

---

3. Though *Thatcher's Drug Store v. Consolidated Supermarkets, Inc.*, 535 Pa. 469, 636 A.2d 156 (1994), involved an issue of promissory, not equitable estoppel, the standard of review for questions of law is applicable to both kinds of estoppel.

stated that "if Blockbuster did not take that space . . . it would only be a matter of a couple of weeks before he would have someone else that could take the space." N.T., June 22, 1995, 66–67. However, this testimony was contradicted by Mr. Singer, as the following colloquy on direct examination demonstrates:

Q: Did you ever tell them [Tenant] you had secured a tenant?

A: No.

Q: Did you ever tell them that it would be easy to secure a tenant?

A: No.

Q: Did you ever tell them that it would be no problem to secure a tenant?

A: No.

N.T., June 22, 1995, 25. Similar testimony was given by Beverly Capistrano, an employee of Landlord. N.T., June 22, 1995, 52. In addition to this testimony, Landlord introduced a letter from Landlord to Tenant dated October 4, 1994, that said "until such time as a replacement tenant is effected, the original terms and conditions of the Lease Agreement with Stonehedge Square Ltd. Partnership remain in force and the store cannot be vacated." Plaintiff's Exhibit 4, p. 2. A letter dated October 26, 1994, from Landlord to Tenant stated: "We have listed the space for rent with the area's most aggressive retail broker. They have shown the space to Blockbuster Video, as well as to other tenants, none have said 'no', but none have said 'yes.' We will continue to market the store but until we are successful, you will have to abide by the terms of your lease." Plaintiff's Exhibit 4, p. 7. Similar letters expressing the Landlord's intention to enforce the lease were sent on October 28, November 8, and November 16, 1994. Plaintiff's Exhibit 4, pp. 12, 16, 19. Finally, we note the following exchange between Ms. Greenberg of Tenant and Landlord's counsel:

Q: So at the time that you did finally close the store you were aware that he [Mr. Singer] fully intended to enforce the lease?

A: I suppose so.

N.T., June 22, 1995, 105.

Based on this evidence, the trial court concluded that the Tenant did not prove by clear, precise and unequivocal evidence that equitable estoppel should bar landlord's claim. We agree with this conclusion. Moreover, the Landlord consistently indicated that while it was trying to secure another tenant, it would enforce the lease against Tenant until a replacement tenant was found. The uncontroverted testimony shown above, and the correspondence sent from Landlord to Tenant, convince us that any reliance by Tenant on Landlord securing another tenant was unreasonable. Therefore, the Tenant did not satisfy the requirements of a claim for equitable estoppel, and the trial court acted properly in so holding.

 The final issue, and the one asserted by Landlord, is whether the trial court erred in holding that Landlord had a duty to mitigate the Tenant's damages. The trial court originally held that no such duty exists. However, upon Tenant's post-trial motion, the trial court reversed itself and held that Landlord did have such a duty. This is a question that has not been addressed by a Pennsylvania appellate court in almost seventy years.[4]

 Tenant argues that leases between landlords and tenants are governed by contract law, *Pugh v. Holmes*, 486 Pa. 272, 284, 405 A.2d 897, 903 (1979), and that general contract law imposes a duty to mitigate on the non-breaching party. *Bafile v. Borough of Muncy*, 527 Pa. 25, 30, 588 A.2d 462, 464 (1991); Restatement of Contracts (Second) § 350 (1965). While this is a correct statement of law, it provides no

---

**4.** This Court declined to address this issue in *Cusamano v. Anthony M. DiLucia, Inc.*, 281 Pa.Super. 8, 421 A.2d 1120 (1980), as the case was decided on other grounds. *See* Harris Ominsky, "Leasing: Landlord Must Mitigate Damages, *Philadelphia Lawyer*, Vol. 59, No. 3, p. 72 (Fall 1996)." Mr. Ominsky is a well recognized expert in the field of real estate law.

relief to the Tenant under the facts of this case; for nowhere in the thirty-seven page lease is there a mitigation clause imposing on the Landlord a duty to mitigate the Tenant's damages if the Tenant breaches the lease.

It is well established that, "[t]he law will not imply a contract different than that which the parties have expressly adopted." *Hutchison v. Sunbeam Coal Corp.,* 513 Pa. 192, 198, 519 A.2d 385, 388 (1986). This rule is particularly apt when reviewing a contract involving two parties of relatively equal bargaining power, as is generally the case in a commercial lease setting. The only exception to this rule is when the inclusion or absence of a contract term would be violative of public policy. *See Pugh v. Holmes, supra.* We find no such violation in this context, for the established law in Pennsylvania does not require that a landlord mitigate a tenant's damages.

In *Milling v. Becker,* 96 Pa. 182 (1880), the Supreme Court held "if the relation of landlord and tenant was not ended by contract, he was not bound to rent to another during the term for relief of the defendant." *Id.* at 185–86. In *Auer v. Penn,* 99 Pa. 370 (1882), the Supreme Court held "[t]he landlord may allow the property to stand idle, and hold the tenant for the entire rent." *Id.,* at 375–76. Finally, in *Ralph v. Deiley,* 293 Pa. 90, 141 A. 640 (1928), the Supreme Court cited *Auer* for the rule that "[r]eletting is not imposed on a landlord as a duty." *Ralph,* supra, at 95, 141 A. at 643.

We acknowledge that there have been several court of common pleas decisions which have imposed a duty to mitigate on a landlord, in both a commercial and residential lease context.[5] *See Brumbach v. Kauffman Carpet Co.,* 67 Berks L.J. 18 (1972) (commercial lease); *Essex House Apartments v. Kayser,* 142 Pitt. L.J. 520 (1994) (residential lease); *Harrison v. Irving Shoes,* 44 Cumb. L.J. 455 (1995) (commercial lease); *Mon Valley Travel, Inc. v. Morgan Management Company,*

---

**5.** Though the language of the Supreme Court cases on this issue does not make a distinction between residential and commercial leases, we address only the commercial lease situation presented by this case.

23 D & C.4th 494 (1995) (commercial lease). *See also In re New York City Shoes, Inc.,* 86 B.R. 420 (Bankr.E.D.Pa.1988) (commercial lease).[6] However, regarding this anomaly, we must agree with the wisdom of Judge Learned Hand, who once wrote that it is not "desirable for a lower court to embrace the exhilarating opportunity of anticipating a doctrine which may be in the womb of time but whose birth is distant." *Spector Motor Service, Inc., v. Walsh,* 139 F.2d 809, 823 (2d Cir.1943) (Hand, J., dissenting), *vacated,* 323 U.S. 101, 65 S.Ct. 152, 89 L.Ed. 101 (1944). This is especially true for an issue as complex as the duty to mitigate damages in the commercial lease setting, which raises a myriad of troublesome questions: e.g., what constitutes "reasonable efforts" to mitigate by the landlord; what happens when the demised premises are on the fifth floor but a new prospective tenant desires space on the twentieth floor; what responsibility does the landlord have in granting "concessions" to a prospective tenant in order to mitigate the breaching tenant's damages? *See* Harris Ominsky, "Leasing: Landlord Must Mitigate Damages", *Philadelphia Lawyer,* Vol. 59, No. 3, p. 72 (Fall 1996). It is certainly not for this Court to "evolve" the law of *Pugh* and impose a duty to mitigate on commercial landlords without guidance from the Supreme Court.[7]

In summary, the Supreme Court has held that a landlord has no duty to mitigate damages, and absent a contrary decision by that Court, it is the duty of this Court and the court of common pleas to adhere to that authority. *Commonwealth v. Buehl,* 540 Pa. 493, 658 A.2d 771 (1995). Moreover, as stated previously, the duty to mitigate in contract does not apply here since Tenant assumed the lease obligations of a previous tenant whose thirty-seven page lease did not provide

**6.** We note that several court decisions have followed the rule of *Milling* and *Auer* and held that no such duty to mitigate exists. *Hoffman Estate,* 47 D. & C.2d 32 (1969) (residential lease); *West Norriton Industrial Park v. Snappy Car Rental Inc.,* 118 Montg. L.R. 73 (1986) (residential lease); *Blanchard v. DiNardo,* 48 D & C.3d 268 (1988) (commercial lease).

**7.** Given the permutations which may arise from the blanket imposition of a duty to mitigate, a more complete solution may be a subject for legislative action.

for mitigation. Therefore, the trial court erred in ordering a new trial on the basis that Pennsylvania law imposes a duty to mitigate on commercial lessors.

CONCLUSION:

The actions of the Landlord here did not constitute acceptance of Tenant's surrender of the lease, and Tenant did not satisfy the requirements of equitable estoppel. Furthermore, Pennsylvania law, as stated by our Supreme Court, does not require Landlord to mitigate the damages of the breaching Tenant in the commercial lease setting.

Consequently, the order of the Court of Common Pleas of Cumberland County granting Tenant–Appellee's post-trial motions is reversed. This case is remanded to that Court for the reinstatement of the verdict as to damages. Jurisdiction relinquished.

McEWEN, President Judge, concurs in the result.