J-A13013-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| TRACY D. KIMMEL AND CHERYL A. KIMMEL, HUSBAND AND WIFE, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| III TOMATO INC., A CORPORATION, | |
| Appellant | No. 1016 WDA 2015 |

Appeal from the Order Entered May 29, 2015
In the Court of Common Pleas of Lawrence County
Civil Division at No(s): 10878 of 2014

BEFORE:  OLSON, STABILE AND MUSMANNO, JJ.:

MEMORANDUM BY OLSON, J.:                    **FILED OCTOBER 18, 2016**

Appellant, III Tomato Inc., a corporation, appeals from the order entered on May 29, 2015, denying its petition to open a confessed judgment filed by Tracy D. Kimmel and Cheryl Kimmel (the Kimmels) pursuant to a commercial lease.  Upon review, we affirm.

The trial court summarized the facts and procedural history of this appeal as follows:

> The subject of [this appeal] is a confessed judgment that was entered against [Appellant] by [the Kimmels] pursuant to a confession of judgment clause contained in a commercial lease in which [the Kimmels] are the lessors and [Appellant] the lessee.
>
> On February 28, 2011, [Appellant] and the [Kimmels] entered into the subject Commercial Lease Agreement (hereinafter "Lease").  The leased premises are comprised

of part of a multi-tenant building and parking lot located in Neshannock Township, Lawrence County, Pennsylvania, consisting of a storefront containing approximately 3500 square feet, having a street address of 2710 Wilmington Road, New Castle, Pennsylvania along with a parking lot, to be used in common with other occupants of the building. The Lease ha[d] an initial term of five years, beginning March 1, 2011 and ending February 28, 2016.

[…T]he confessed judgment [was] in the amount of $52,347.35, consisting of late rent charges for the period of May 2014 through February 2016, an amount for reimbursement for air conditioning repairs, and attorneys' fees. [The] Kimmels' notice of default alleged that [Appellant] was in default for (1) failure to obtain insurance, and provide proof of insurance to [the] Kimmels, (2) installing an unsafe and hazardous brick oven inconsistent with the requirements of applicable law, (3) failure to keep the premises in good condition and repair, including the roof and air conditioning unit, (5) failure to maintain and repair the roof and air conditioning unit, (6) failure to make timely payments of rent, and (7) failure to promptly pay expenses and repair of the air conditioning unit.

\*       \*       \*

In support of its [p]etition to [o]pen, [Appellant] allege[d], *inter alia*, that [the] Kimmels themselves breached the Lease by failing to perform their obligations under the Lease to maintain the common parking lot area serving the leased premises[,] by not repairing potholes and a light pole, refusing to repair the leaking roof on the building [that housed] the leased premises, and refusing to maintain and repair the air conditioning unit servicing the leased premises[. Appellant also alleged] that as a result of [the] Kimmels' breaches of the Lease, [Appellant] suffered damages to its leasehold improvements in an amount greater than $5,000.00, lost revenues, increased cost, overall reduction in the value of its business, and losses in excess of $50,000.00. For a time in 2013, [Appellant] paid the rent into escrow in protest of [the] Kimmels' failure to address [Appellant's] complaints. The dispute was resolved and [Appellant] resumed making payments of rent directly

- 2 -

to [the] Kimmels. However, [Appellant] again began escrowing its rental payments beginning in May 2014.

[The] Kimmels' notice of default was sent to [Appellant] by letter dated August 8, 2014, asserting that [Appellant] was in default under the Lease for the reasons described above. On August 27, 2014, [the] Kimmels filed their [c]omplaint for [c]onfession of [j]udgment for [m]oney, claiming, *inter alia*, rent past due as well as accelerated rent due in the future during the remainder of the Lease's term. On September 26, 2014, [Appellant] filed its [p]etition to [s]trike and/or [o]pen [j]udgment, and execution on [the] Kimmels' confessed judgment was stayed pending resolution of [Appellant's] [p]etition. [Appellant] continued to pay the rental [sum] into escrow, but in October 2014, vacated the leased premises, and ceased paying rent. [On May 29, 2015, the trial court filed an order and accompanying memorandum denying Appellant relief.]

Trial Court Opinion, 5/29/2015, at 1-3 (record citations and footnote omitted). This timely appeal resulted.[1]

On appeal, Appellant presents the following issue for our review:

1. Did the trial court err in denying Appellant[']s petition to open judgment?[2]

_____

[1] Appellant filed a notice of appeal on June 29, 2015. On July 9, 2015, the trial court directed Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant complied timely on July 30, 2015. The trial court relied upon its earlier memorandum issued on May 29, 2015 in support of its denial of relief.

[2] We note that Appellant filed a petition to strike/and or open judgment. In its Rule 1925(b) statement, Appellant challenged the trial court's refusal to strike the judgment. On appeal, however, Appellant does not challenge the trial court's decision on the petition to strike judgment. Accordingly, Appellant has waived this issue for failure to develop an argument. **See** Pa.R.A.P. 2119(b); **Commonwealth v. Johnson**, 985 A.2d 915, 924 (Pa. 2009) ("[W]here an appellate brief fails to provide any discussion of a claim
*(Footnote Continued Next Page)*

Appellant's Brief at 4 (superfluous capitalization omitted).

Appellant contends the trial court erred by denying its petition to open judgment because it provided meritorious defenses to the confessed judgment. Appellant argues the trial court erred by denying its petition to open judgment when the trial court "concluded that [Appellant] did not allege, nor did counsel argue, constructive eviction or a breach of quiet enjoyment." *Id.* at 9. Appellant contends that although it did not "explicitly say the words 'constructive eviction,' Appellant more than adequately argued that it was entitled to withhold rent as a result of [the Kimmels'] breaches – *i.e.* that the Kimmels' actions resulted in a constructive eviction." *Id.* at 9-10. More specifically, Appellant argues it "was only required to state that rent was not owed due to the Kimmels' breach of the Lease." *Id.* at 10. Next, Appellant asserts the trial court erred by treating its loss of business claims, in excess of the judgment amount, as set-offs "because they arose as direct result of the Kimmels' breach of the Lease." *Id.* at 12. As a result, Appellant maintains that its claims "must be characterized as a failure of consideration." *Id.* Finally, Appellant argues "[t]he [t]rial [c]ourt erroneously determined that [Appellant] was responsible for the repair and replacement of the air conditioning" system. *Id.* at 13. At a minimum, Appellant contends, "the Lease is ambiguous" because it states that

*(Footnote Continued)* ―――――――――――

with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived.").

- 4 -

Appellant "shall be responsible for all maintenance and repairs" but provides that the Kimmels "shall furnish the existing equipment for maintaining heating and air conditioning for the leased premises." *Id.*

Our standard of review is well settled:

> We review the order denying Appellant's petition to open the confessed judgment for an abuse of discretion. Judicial discretion requires action in conformity with law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason.
>
> The trial court may open a confessed judgment if the petitioner (1) acts promptly, (2) alleges a meritorious defense, and (3) can produce sufficient evidence to require submission of the case to a jury. Generally, the court will dispose of the rule on petition and answer, along with other discovery and admissions.
>
> When determining if the petitioner acted promptly, the courts are not bound by an inflexible time frame. The crucial factor in determining whether a petition is timely is not the specific time which has elapsed but rather the reasonableness of the explanation given for delay.
>
> A meritorious defense is one upon which relief could be afforded if proven at trial. Pa.R.Civ.P. 2959(e) sets forth the standard by which a court determines whether a moving party has properly averred a meritorious defense. If evidence is produced which in a jury trial would require the issues to be submitted to the jury the court shall open the judgment. Furthermore, the court must view the evidence presented in the light most favorable to the moving party, while rejecting contrary evidence of the non-moving party. The petitioner need not produce evidence proving that if the

judgment is opened, the petitioner will prevail.[3] Moreover, we must accept as true the petitioner's evidence and all reasonable and proper inferences flowing therefrom.

In other words, a judgment of confession will be opened if a petitioner seeking relief therefrom produces evidence which in a jury trial would require issues to be submitted to a jury. The standard of sufficiency here is similar to the standard for a directed verdict, in that we must view the facts most favorably to the moving party, we must accept as true all the evidence and proper inferences in support of the defense raised, and we must reject all adverse allegations. The trial court can make this decision as a matter of law when the defense presented is without adequate substance, because contract construction and interpretation is generally a question of law for the court to decide.

A contract's language is unambiguous if it can be determined without any other guide than knowledge of the simple facts on which its meaning depends. When the contract is clear and unambiguous, the meaning of the

_____

[3] On presenting a meritorious defense, we have further clarified:

The [defendant] does not have to prove every element of its defense; however, it must set forth the defense in precise, specific and clear terms.

Merely asserting in a petition to open default judgment that one has a meritorious defense is insufficient. The moving party must set forth its meritorious defense. If any one of the alleged defenses would provide relief from liability, the moving party will have pled a meritorious defense and will have satisfied the third requirement to open the default judgment.

*Seeger v. First Union Nat. Bank*, 836 A.2d 163, 166 (Pa. Super. 2003); *see also Ecumenical Enterprises, Inc. v. NADCO Const., Inc.*, 385 A.2d 392, 395 (Pa. Super. 1978) ("It is clear that the petition to open must set forth its defenses in precise, specific, clear and unmistaken terms and must set forth the facts on which the defense is based.") (internal citation and quotations omitted).

contract is ascertained from the writing alone. A court must not distort the meaning of the language or resort to a strained contrivance to find an ambiguity. Additionally, a mere disagreement between the parties regarding the proper construction of the language does not render the contract ambiguous. In the context of a petition to open a confessed judgment, the function of our Court is not to weigh the evidence in support of the defense, but merely to determine whether there was sufficient evidence to go to the jury.

Whether a judge has correctly interpreted a writing and properly determined the legal duties which arise therefrom is a question of law for the appellate court. The legal effect or enforceability of a contract provision presents a question of law accorded full appellate review and is not limited to an abuse of discretion standard. Likewise, if the matter under review involves the interpretation of the Pennsylvania Rules of Civil Procedure, we have before us a question of law, where our standard of review is *de novo* and our scope of review is plenary.

*Neducsin v. Caplan*, 121 A.3d 498, 506–507 (Pa. Super. 2015) (internal citations and quotations omitted).

In this case, the lease provided, *inter alia*:

\*         \*         \*

5. **PARKING**.    [Appellant's] customers, invitees, and licensees shall have the right, during the term of this Lease, to use in common with [the Kimmels'] other tenants, their agents, licensees and other tenants, the parking lot owned by [the Kimmels] and located adjacent to the Leased Premises.  […] [Appellant] shall not be responsible for any repairs required of the subject parking area.

\*         \*         \*

12. **INDEMNITY AND RELEASE**. […] [Appellant] agrees that the Leased Premises and appurtenances are delivered in good repair and in a safe and tenable condition and accepted in an "AS IS" condition.   Without limiting the

- 7 -

foregoing, [the Kimmels] shall not be responsible or in any manner liable to [Appellant] or any other person whomsoever for any loss, damage or injury occasioned by rain, snow or the elements[.]

13. **CONDITION OF PREMISES**.  It shall be the sole responsibility of [Appellant] to keep the Leased Premises and every part thereof in good condition and repair and in a clean, safe and sanitary condition and, upon the expiration or sooner termination of this lease, or any extension thereof, to promptly surrender the Leased Premises back to the [Kimmels] in as good condition as received by [Appellant] except for reasonable wear and tear.  All damages resulting from the installation and removal of any property by [Appellant] shall be fully repaired by [Appellant] prior to the surrender of possession.

14. [**APPELLANT'S**] **RESPONSIBILITIES**.    [Appellant] shall be responsible for all maintenance and repairs, except for those for which the [Kimmels] [are] responsible, including but not limited to, maintenance and repair of plate glass windows, glass doors and frames thereof.

\*          \*          \*

15. [**THE KIMMELS'**] **RESPONSIBILITIES**.

A.     [The Kimmels] shall maintain in good condition the exterior of the building, the roof, and structural members of the building of which the Leased Premises form a part, and any water, gas, or electrical lines or conduits permanently imbedded in walls or floors.

\*          \*          \*

B.     [The Kimmels] shall furnish the existing equipment for maintaining heating and air conditioning for the Leased Premises.

\*          \*          \*

D.     The [Kimmels] at all times shall be solely responsible for and shall keep and maintain the sidewalks, parking lot, driveway and pavement of

- 8 -

the Leased Premises in a safe and clean condition and free from all hazards, ice and snow. [The Kimmels] shall be responsible for all repairs to and replacement of all sidewalks, driveways and parking lots located on the Leased Premises.

\* \* \*

21. **SURRENDER**. No act or conduct of [the Kimmels], whether consisting of the acceptance of keys to the Leased Premises, or otherwise, shall be deemed to be or constitute an acceptance or the surrender of the Leased Premises by [Appellant] prior to the expiration of the term hereof and such acceptance by [the Kimmels] of surrender by [Appellant] shall only occur and must be evidenced by a written acknowledgment of acceptance of surrender signed by [the Kimmels].

\* \* \*

27. **RESPONSIBILITIES OF** [**THE KIMMELS**].

\* \* \*

D. Damage for Interruption of Use.

[The Kimmels] shall not be liable for any damage, compensation or claim by reason of inconvenience or annoyance arising from the necessity of repairing any portion the building, the interruption in the use of the Leased Premises, or the termination of this lease by reason of damage or for any reason whatsoever.

\* \* \*

F. Representation of Condition of Leased Premises

Except as set forth herein, the [Kimmels] have not made and do not make any warranties and/or representations, express or implied, as to the physical condition, habitability, layout, footage, income, expense, operation, compliance with moving and building laws, or other matter or thing

- 9 -

whatsoever affecting or in any manner related to the Leased Premises and this lease. [Appellant] accepts the premises in an "AS IS" condition. The [Kimmels] have let the Leased Premises in [its] present condition and without any warranties or representations, express or implied, on the part of the [Kimmels], their employees, servants, and/or agents. It is understood and agreed that [the Kimmels] are under no duty to make alterations or repairs at the time of letting or at any time thereafter.

Commercial Lease Agreement, 2/28/2011, at 2-12.

In support of its petition to open, Appellant averred, in pertinent part:

\*          \*          \*

6.    It was not [Appellant] but the [Kimmels] that breached the lease agreement attached to the complaint.

7.    Paragraph 5 of said lease agreement states that the [Kimmels] will be responsible for the repair of the parking lot at the premises.

8.    [Appellant] had informed [the Kimmels] that as a result of the severe weather during the past winter (2013-2014), the parking lot had developed several deep and dangerous potholes.

9.    [The Kimmels] on several occasions had stated that they would repair the damage to the parking lot but ha[d] continually refused to make the necessary repairs.

10.   The roof of said premises leased to [Appellant] has been leaking for more than a year. The [Kimmels] have refused to repair the leak in the roof and to date [Appellant's] leasehold improvements have been damaged in an amount greater than $5,000.00.

11.   An outside light pole in the parking lot of the premises was struck by a vehicle and had fallen to

- 10 -

the ground in 2013. To date the light pole and lamp have not been replaced causing the parking lot to be unsafe and poorly lit at night.

12.  In May 2014, the roof top air[-]conditioning unit stopped working.

13.  The lease agreement requires the [Kimmels] to maintain the air conditioning units that were in place at the time the lease agreement was executed.

14.  This roof top unit was in place at the time of the execution of the lease agreement and the [Kimmels] have failed to repair, fix or replace the unit.

15.  [Appellant's] business income [h]as decreased significantly as a result of [the Kimmels'] breach of the lease agreement.

16.  As a result of [the Kimmels'] breach of the lease agreement, [Appellant] has lost revenues, increased its cost and seen an overhaul [sic] reduction in the value of its business.

17.  [Appellant's] business has suffered losses in excess of $50,000.00 as a result of [the Kimmels'] breach of the lease agreement.

18.  As a result of [the Kimmels'] breach of the lease agreement, [Appellant] does not owe the [Kimmels] the sums set forth in the [c]onfession of [j]udgment for [m]oney filed in this matter.

*          *          *

Appellant's Petition to Strike and/or Open Judgment, 9/26/2014, at 2-3 (unpaginated).

Initially, we will examine Appellant's claims pertaining to the air-conditioning system. The Kimmels agreed to "furnish the existing equipment for maintaining heating and air conditioning for the Leased

Premises." Commercial Lease Agreement, 2/28/2011, at 6, ¶ 15B. Appellant agreed that the property "and appurtenances [we]re delivered in good repair and in a safe and tenable condition and accepted in an 'AS IS' condition." *Id.* at 4, ¶ 12. The Kimmels had no duty "to make alterations or repairs at the time of letting or at any time thereafter." *Id.* at 12, ¶ 27F. Appellant agreed to be responsible for all maintenance and repairs to the premises, unless expressly delineated to the Kimmels under a specific provision of the lease. *Id.* at 5, ¶ 14. Appellant has not pointed to, and our review of the lease has not revealed, a specific provision of the lease that holds the Kimmels responsible for air conditioner maintenance.

Based upon the foregoing, we discern no ambiguity in the lease. Initially, we reject Appellant's proposition that the use of the word "maintain" in paragraph 15B of the lease suggests the Kimmels are responsible for maintaining the heating and air conditioning equipment. The plain contractual language states that the Kimmels "shall furnish the existing equipment for maintaining heating and air conditioning for the Leased Premises." Commercial Lease Agreement, 2/28/2011, at 6. The Kimmels were only required to "furnish" the "existing" equipment. The word "maintaining" is in reference to the equipment, not the Kimmels. The plain meaning of the lease provided that the "**existing equipment**" was "**for** maintaining" or providing temperature control. The provision is wholly silent regarding repairs. It simply does not state that the Kimmels shall

furnish the existing equipment **and** bear responsibility for maintaining that equipment. Moreover, Appellant agreed that at the time of the contract, in February 2011, the equipment was in good repair and accepted the premises "as is." Appellant averred, in its petition to open judgment, the air conditioning unit stopped working in May 2014. However, under the lease, the Kimmels simply had no duty to make repairs more than three years later. Thus, Appellant failed to provide a meritorious defense regarding the air conditioning system that supported its petition to open the confessed judgment in this regard.

Next, we examine Appellant's claims regarding repairs to the roof and parking lot. There is no dispute that pursuant to paragraph 15(a) and (d), the Kimmels were responsible for those repairs. Commercial Lease Agreement, 2/28/2011, at 5-6.

Our Pennsylvania Supreme Court has stated, "[n]othing is better settled in Pennsylvania than that a tenant for years cannot relieve himself from his liability under his covenant to pay rent by vacating the demised premises during the term, and sending the key to his landlord." *Stonehedge Square Ltd. Partnership v. Movie Merchants, Inc.*, 715 A.2d 1082, 1084 (Pa. 1998). Our Supreme Court determined, "where the landlord materially breaches express covenants to repair or to maintain the leasehold in a habitable state[,]" it is analogous to a breach of the implied warranty of habitability. *Pugh v. Holmes*, 405 A.2d 897, 907 (Pa. 1979).

"The covenants and warranties in the lease are mutually dependent, the tenant's obligation to pay rent and the landlord's obligation imposed by the implied warranty of habitability to provide and maintain habitable premises are, therefore, dependent and a material breach of one of these obligations will relieve the obligation of the other so long as the breach continues." *Pawco, Inc. v. Bergman Knitting Mills, Inc.*, 424 A.2d 891, 894 (Pa. Super. 1980) (*en banc*), *citing* **Pugh**, 405 A.2d at 903.

In cases involving a breach of habitability, a tenant may: (1) surrender possession of the premises; (2) remain in possession subject to rent abatement; or (3) repair the defects and deduct the cost of repairs from the rent. *Echeverria v. Holley*, 2016 WL 3268695, at *4 (Pa. Super. 2016), *citing* **Pugh**, 405 A.2d at 907–908. To relieve the tenant from further liability under the lease, the burden is on the tenant to show by clear and convincing evidence that the landlord accepted the tenant's surrender. *Stonehedge Square Ltd. Partnership v. Movie Merchants, Inc.*, 685 A.2d 1019, 1023 (Pa. Super. 1996), *affirmed*, 715 A.2d 1082 (Pa. 1998).

Moreover, unlike a mutual surrender, this Court recently examined the defense of constructive eviction, stating:

> constructive eviction is one species of a violation of the lessee's right to quiet enjoyment. While one might gain relief for such a violation without being constructively evicted, one cannot be constructively evicted absent such a violation. In effect, constructive eviction occurs when a lessor's violation of a lessee's entitlement to quiet enjoyment is so extreme as to interfere seriously with the lessee's ability to use the leasehold as it was intended to be

- 14 -

used, and the violation prompts the tenant to abandon the property within a reasonable amount of time.

*Sears, Roebuck & Co. v. 69th Street Retail Mall, L.P.*, 126 A.3d 959, 973 (Pa. Super. 2015).

In this case, upon review, we conclude Appellant did not plead a defense of constructive eviction in its petition to open. Appellant alleged that its business income "decreased significantly" and it "lost revenues." It further claimed its costs increased and its business value was reduced "in excess of $50,000.00" as a result of the Kimmels' purported breach of the lease agreement. Appellant's Petition to Strike and/or Open Judgment, 9/26/2014, at 2-3 (unpaginated). Appellant concedes it never specifically alleged constructive eviction, but argues the aforementioned allegations were sufficient to assert that no rent was due because the Kimmels breached the lease. Appellant' Brief at 9-10. However, Appellant was required to set forth its defenses in precise, specific, clear and unmistakable terms. *Ecumenical Enterprises, Inc.*, 385 A.2d at 395. Appellant did not aver that the damages were so extreme as to interfere seriously with its ability to use the leasehold as it was intended to be used or that the violation prompted Appellant to abandon the property. *Sears, Roebuck & Co.*, 126 A.3d at 973. While Appellant now argues the maintenance problems were sufficient to constitute a complete breach that justified terminating the lease, we simply cannot address issues raised for the first

time on appeal. *See* Pa.R.A.P. 302(a). Thus, we conclude Appellant did not sufficiently set forth a constructive eviction defense in its petition to open.

Moreover, upon review of the record, Appellant did not employ any of the three options available to address a breach of habitability. Under paragraph 21 of the lease, if Appellant intended to surrender the property, it was required to obtain "written acknowledgement of surrender signed by" the Kimmels. Commercial Lease Agreement, 2/28/2011, at 9. The burden is on Appellant to show by clear and convincing evidence that the landlord accepted a tenant's surrender. *Stonehedge Square Ltd. Partnership*, 685 A.2d at 1023. Here, there is no evidence of surrender. Appellant may have unilaterally and voluntarily abandoned the premises, but it was not relieved of its obligation to continue paying rent under the lease. Further, Appellant did not aver in its petition to open that it remained in possession of the leasehold subject to rent abatement or that it repaired the defects and deducted the cost of repairs from the rent.

Finally, we reject Appellant's contention that the trial court erred by characterizing its claims as set-offs or unliquidated counterclaims. For its proposition, Appellant relies on our Supreme Court's 1963 decision in *Nadolny v. Scoratow*, 195 A.2d 87 (Pa. 1963). *See* Appellant's Brief at 11-12. A brief recitation of that case reveals distinctions. In *Nadolny*, Nadolny leased a two-story building to Scoratow specifically for the storage of pre-cast stone. When the second floor buckled under the weight of the

- 16 -

stored material, Scoratow abandoned the property. Nadolny confessed judgment under the lease for unpaid rent. Scoratow subsequently filed a petition to open the judgment arguing the damage to the premises was the result of Nadolny's misrepresentation that the second floor could support the weight of the pre-cast stone. Scoratow also argued that such misrepresentation entitled him to rescind the lease and avoid liability for the remaining unpaid rent. The Supreme Court agreed, noting that if the alleged misrepresentation was proven to a jury, the agreement would be disaffirmed. Stated differently, the property owner's misrepresentation of the premises fraudulently led to the lease formation and amounted to a lack of consideration.[4] Accordingly, if a jury determined as such, the lease would be invalidated in its entirety. Thus, the **Nadolny** Court determined that opening the confessed judgment in that case was proper.

By contrast, in this case, there was a five-year commercial lease. Both parties largely performed under the lease for the better part of four years (*i.e.*, occupancy, rental payments, receipt of rent, and some repairs). Hence, it is difficult to say there was a complete failure of consideration and, therefore, no contract in place. Appellant does not allege that the Kimmels made misrepresentations requiring a complete invalidation of the lease,

---

[4] Our Rules of Civil Procedure offer additional support for our conclusion. Specifically, Pa.R.C.P. 1030 provides that "fraud" and "failure of consideration" constitute affirmative defenses; whereas, "set-offs" arising from breach of contract are not considered as such. **See** Pa.R.C.P. 1030(a).

outright barring their right to recover the unpaid rent. Instead, Appellant contends the Kimmels' breached the lease. Appellant's Brief at 12. Such assertion amounts to a counterclaim, which is not proper in a petition to open judgment.

Based upon all of the foregoing, we conclude Appellant did not allege a meritorious defense requiring submission to a jury. Accordingly, the trial court properly denied Appellant's petition to open.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/18/2016